## State Board of Funeral Directors v. Gillen & Coulter Co.

*Walter E. Alessandroni,* Attorney General, for plaintiff.

*Robert D. Myers,* for defendant.

MILLER, J., June 17, 1963.—This is an appeal from an adjudication and order of the State Board of Funeral Directors entered February 14, 1963, which has been taken to this court under the provisions of the

Administrative Agency Law, the Act of June 4, 1945, P. L. 1388, 71 PS §1710.41. Appellants are Gillen & Coulter Company, a Delaware corporation, with principal office situate in Allegheny County, which is registered to do business in Pennsylvania as a foreign corporation and is authorized to engage in business as a funeral director, and one Rolland T. Snee, an individual residing in Allegheny County. This appeal arises from the refusal of the State Board of Funeral Directors to register Mr. Snee either as a temporary, or "standby" supervisor of the corporate appellant, Gillen & Coulter Company (Gillen), and also the refusal of the application of Mr. Snee for renewal of his license as a funeral director for the purpose of serving as Gillen's temporary, or "standby" supervisor.

The history of this case actually begins in July, 1962, when Gillen's registered permanent supervisor, one E. Burdette Robinson, departed for a contemplated period of six weeks for the purpose of taking a honeymoon cruise on the Mediterranean, leaving the business in charge of another licensed funeral director who practiced in the neighborhood. Learning of this, the State Board of Funeral Directors ordered Gillen to cease doing business until a temporary supervisor was registered with the board, whereupon on July 20, 1962, Gillen submitted to the board an application to register Rolland T. Snee as its temporary supervisor. On the same day, Mr. Snee, who had previously been a licensed funeral director, but had allowed his license to expire, filed with the board an application for the renewal of his license. Appellants were informed that their applications would be considered by the board at its meeting on July 26, 1962, and would be approved without difficulty. However, on that date the board adopted a resolution prohibiting any funeral director from being connected in any way with a cemetery, and on the same day notified appellants that action on their applications

was delayed pending a determination of whether or not they complied with this new resolution. As a result of this delay, it was necessary for Gillen to recall its registered permanent supervisor from his honeymoon in order that its business could be resumed. . . .

It must be noted that in the time which elapsed between Gillen's original application on July 26, 1962, and the hearing of January 31, 1963, the nature of Gillen's application was changed, probably because of the difficulties which it had encountered in the interim. While the original application merely sought the registration of Mr. Snee as a temporary supervisor during the permanent supervisor's absence, the application resubmitted on January 14, 1963, and the evidence adduced in support thereof, sought the appointment of Mr. Snee to the position of "standby" supervisor on a permanent basis. In other words, Gillen was seeking approval for Mr. Snee to be in such status that he could assume the duties of supervisor of Gillen's business at any time, and for whatever reason, the permanent supervisor absented himself therefrom.

Thus, these applications raised three issues before the board, and these same issues are now before this court on appeal:

1. Should the license of a formerly active and licensed funeral director be renewed, where, although otherwise qualified, it appears that the applicant has allowed his license to lapse for several years because of withdrawal from the active practice of funeral directing, and it further appears that if his license is renewed, the applicant contemplates engaging in the practice of funeral directing only as a part-time activity?

2. Should a funeral director be authorized to serve as a temporary supervisor of a corporate funeral directing establishment during the absence of the permanent supervisor, where it appears that the proposed temporary supervisor, when not acting in that

capacity, will be engaged as a funeral director only on a part-time basis?

3. In addition to the permanent supervisor required for a corporate funeral directing establishment by Regulation 11.1 of the State Board of Funeral Directors, should such corporation be permitted to register also with the board a "standby" supervisor who will thus be permanently qualified and available to assume the duties of supervisor whenever the registered permanent supervisor is absent from the business?

1. Should Mr. Snee's funeral director's license be renewed?

In its adjudication and order, the board treated only the first and third issues set forth above, and it resolved both against appellants. After studying the notes of testimony adduced at the hearing on January 31, 1963, and the board's adjudication and order, we conclude that Mr. Snee's application for renewal of his license was refused solely on the ground that he does not presently intend to practice his profession on a full-time basis. It appears that he had been licensed initially in 1947, but had withdrawn from active practice in 1960 for economic reasons, and has since worked for a steel company, this being employment which he had previously pursued even when his license was active. His testimony indicated that he is now trying to reestablish himself in the full-time practice of his profession, but that until he is able to make the necessary arrangements, he intends, if his license is renewed, to work as a funeral director for Gillen whenever his services are needed, or for any other established funeral directing business if the opportunity presents itself, and failing in both of these, to work at the steel company, providing the latter employment is available. He further testified that his periods of work with the steel company had become increasingly sporadic, and that, under no circumstances, if his license were to be renewed,

would his duties with the steel company in any way interfere with the practice of his profession. There is no suggestion in the record that Mr. Snee is not otherwise qualified as a funeral director or that he has ever been in any difficulty whatsoever with the Licensure Board.

Our study of the Pennsylvania Funeral Director Law, the Act of January 14, 1952, P. L. 1898, 63 PS §479.1, et seq., as well as the rules and regulations promulgated by the State Board of Funeral Directors pursuant to the authority conferred by the law, does not indicate that a person otherwise qualified and licensed to practice funeral directing must do so on a full-time basis. Section 11 of the law, 63 PS §479.11, in itemizing eight separate grounds for refusal or suspension of a license, does not contain such a provision. To our knowledge, such a requirement is not usually imposed upon any professionally licensed person in this Commonwealth. It is true that the board is vested with discretion in its licensing powers, but it is our opinion that the refusal to renew Mr. Snee's license under these circumstances amounts to an abuse of administrative discretion.

During the period when he held a funeral director's license, Mr. Snee testified that his practice had been limited and he had found it necessary to seek part-time employment at the steel company in order to supplement his income. During those years, the board had not seen fit to withdraw his license, nor refuse its renewal at the beginning of each licensing year. Further, it appears that the board, by its refusal to license Mr. Snee, is perhaps departing from the administrative standard which it has set by its regulations. Regulation 19.3 of the board concerns renewals of licenses. It reads in pertinent part as follows:

"However, pursuant to the discretionary power of the Board to renew the license of any funeral director

who has failed to make timely application for renewal, the Board adopts as a standard of its renewal policy that any licensee who fails to file for the renewal of his license for a period of five (5) years shall lose his renewal privilege, unless the Board finds that an adequate explanation exists for such failure to renew, such as, sickness, disability, economic hardship, or other similar considerations."

The effect of this regulation is to make the renewal of a license within five years virtually automatic. Even beyond that period of time it may be renewed upon a showing of good cause for delay. Appellant Snee's license expired January 31, 1960, three years to the day prior to the hearing on his renewal application. Even if it had been over five years, good cause for the delay was shown. Snee testified that he gave up his practice because of economic hardship.

Certainly the board has the right, and even the positive duty, to refuse to renew a license when the public interest requires such action. But absent any such showing, a renewal application filed within five years should be approved according to the announced exercise of the board's discretion in Regulation 19.3. Any action taken by the board must be based upon reason and have some relation to the evils to be corrected by the Funeral Director Law. Here, the board has shown no reason for the refusal that would concern the public interest, or which is founded upon any prohibition either in the law or the board's own regulations.

An earlier decision of this court in the case of Nevins, Inc. v. State Board of Pharmacy, 50 Dauph. 234 (1941), is apposite. In that case a license was refused because the Pharmacy Board deemed the applicant not qualified. No facts were found to support this conclusion. We there said:

" 'It follows that there is no constitutional authority vested in the State Board of Pharmacy to refuse per-

mits for any reason other than that which would be against a settled public policy inherent in our very frame and structure of government. It could not refuse upon some ground of policy which the Board deems should exist but which the legislature has not established.' " (p. 238.)

While the board here did find some facts upon which its conclusion was based, we do not deem these facts to be in the public interest nor within the scope of the administrative discretion conferred by the legislature. All delegations of legislative power must be surrounded with sufficient standards to guide the actions of the body to whom the power is given or the attempted delegation is void: Holgate Bros. Co. v. Bashore, 331 Pa. 255 (1938) ; Bell Telephone Company of Pa. v. Driscoll, 343 Pa. 109 (1941) ; Hotel Casey Co. v. Ross, 343 Pa. 573 (1942) ; Kellerman v. Philadelphia, 139 Pa. Superior Ct. 569 (1940) ; and Saccone v. Scranton, 341 Pa. 526 (1941).

The right to exercise discretion is not sacrosanct nor wholly immune under any and all circumstances. The police power, like that of other governmental powers, is subject to constitutional limitations and judicial review: Hertz Drivurself v. Siggins, 359 Pa. 25, 46 (1948) ; Commonwealth v. Zasloff, 338 Pa. 457 (1940). This appears at page 460 in Zasloff:

"It has frequently been stated by federal and state courts alike that a law which purports to be an exercise of the police power must not be arbitrary, unreasonable or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the object sought to be attained: Mugler v. Kansas, 123 U. S. 623, 661; Chicago, Burlington & Quincy Railway Co. v. Drainage Commissioners, 200 U. S. 561, 593; Nebbia v. New York, 291 U. S. 502, 525, 537, 539; Mahon v. Pennsylvania Coal Co., 274 Pa. 489, 497; White's Appeal, 287 Pa. 259,

265; Breinig v. Allegheny County, 332 Pa. 474, 483. 'The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations': Lawton v. Steele, 152 U. S. 133, 137; Otis v. Parker, 187 U. S. 606, 608; Burns Baking Co. v. Bryan, 264 U. S. 504, 513."

The board's ruling places Mr. Snee in a difficult position, and imposes an unusual and unnecessary restriction upon him. He cannot work as a funeral director without a license. Yet without a license, he cannot legally attempt to "build" his practice so that it will eventually become a lucrative, full-time livelihood. As we understand the board's decision, it fears that the public may suffer from the ineptitude of a funeral director who is careless or forgetful of the established funeral procedures because he practices them infrequently. However, it seems that this danger is equally potent in the situation of the funeral director-furniture store proprietor who is still found in some small towns, or in the individual who by temperament is lax in his observation of professional standards. One of the board's functions is to police these situations, but the potentiality of their existence is not in our minds sufficient reason for refusal of a license ab initio.

It is possible that the board, upon reflection, or its counsel in the preparation of his brief, realized that the refusal of the renewal of Mr. Snee's license was probably incorrect. At any rate, in the argument brief filed with us on the board's behalf by the Attorney General, the following paragraph appears:

"However, to the extent that the application merely requested a temporary substitute for the permanent supervisor while such person was vacationing, what was sought was clearly not inconsistent with the Board's rules and should have been granted. Conse-

quently, the Commonwealth would be willing to agree to an appropriate order directing that Respondent Snee be approved on a *temporary* basis for the permanent supervisor's planned vacation in May."

This position was similarly stated by the Deputy Attorney General who argued the case for the board.

Thus, it appears that the board, by its counsel, is now willing to renew Mr. Snee's license, because he could not be approved as a temporary supervisor unless he holds a valid funeral director's license. Whether or not we are correct in our interpretation of this portion of the appellee's brief and argument, it is our conclusion that the board should have granted Mr. Snee's application for the renewal of his license, and on this first issue, we affirm this appeal.

2. Should Mr. Snee be approved as a temporary supervisor during the permanent supervisor's vacation?

The second issue as to whether or not Mr. Snee should be approved as the temporary supervisor of Gillen's business while the permanent supervisor is absent is also resolved, first, by our conclusion that Mr. Snee's license should be renewed, his lack of a license apparently being the only reason for the refusal of the application to register him as a temporary supervisor, and secondly, by the appellee's position stated at argument that the board is willing to agree to an appropriate order directing that Snee be approved on a temporary basis for the permanent supervisor's planned vacation. Unfortunately, this vacation was planned for May, which is now past, but we assume that such vacation plans can be reformulated for a definite period and the approval of the board for Mr. Snee to serve as temporary supervisor during such period can be readily obtained. It is therefore our direction that this be accomplished expeditiously by the board, in view of the

difficulty and delay of almost one year that has been already suffered by the appellants.

3. Should a "standby" supervisor be approved?

The third issue is more difficult, and raises the question as to whether a "standby" supervisor should be approved for a corporate funeral directing establishment so that such individual will be always available whenever, and for whatever period, it is necessary for the permanent supervisor to be absent.

The answer to this question cannot be found either in the provisions of the Funeral Director Law, supra, or in the rules and regulations of the board. The requirement for a permanent supervisor for a corporate funeral directing business is entirely a creature of the board, and is embodied in its regulation 11.1, as follows:

"Corporations duly licensed to engage in funeral directing shall have a funeral director duly licensed by and in good standing with this Board to act as permanent supervisor, and said permanent supervisor shall devote his entire time to the business which he is supervising, and shall not conduct an establishment of his own nor supervise any other establishment, nor be associated in any manner whatsoever with any other funeral establishment."

There is no statutory requirement or provision for such a supervisor, either "full-time", "part-time", "standby", "permanent", "temporary", "concurrent", "assistant", or otherwise. All parties involved here have agreed, however, that such a regulatory requirement is a proper exercise of the board's delegated power, found in section 16 of the Funeral Director Law, as follows:

"(a) The board shall be charged with the enforcement of this act. It shall be empowered to formulate necessary rules and regulations not inconsistent with

this act for the proper conduct of the business or profession of funeral directing and as may be deemed necessary or proper to safeguard the interests of the public and the standards of the profession": 63 PS §479.16 (a).

The reasons justifying such a requirement are obvious. A corporation cannot act except through its agents; it is clear that these agents must possess a high degree of professional responsibility and care in a profession such as funeral directing. The regulation seeks to protect the public by pinpointing responsibility in the tragic eventuality of disease, unsanitation, or attempts by unscrupulous persons seeking to take advantage of individuals at a time of personal grief. As such then the regulation is a proper exercise of the police power well within the policy and purpose of the statute under which it was promulgated. Regulation 11.1, per se, cannot be said to be arbitrary or unreasonable.

Appellants argue, however, that the board's action is both unfair and unrealistic in disallowing the registration of a permanent "standby" supervisor who may take over in the event of sickness, vacation, or other circumstance which would remove the "full-time" supervisor from his post. Their reasoning is based on the established but unwritten policy of the board in requiring a "temporary" substitute to take over in the permanent supervisor's absence. Appellants claim that no expeditious method exists for the appointment of such a "temporary" substitute and cite the facts of this case to prove it. They charge further that the resultant interruption of business, loss of clients, etc., is an unconstitutional denial of property without due process of law. The only solution, they conclude, is to provide for a "permanent standby" supervisor who could take over automatically in the "permanent full-time" supervisor's absence.

The Commonwealth replies with the fear that this system would breed administrative havoc; that the "automatic" elevation from "standby" to "full-time" might occur "months or years after the initial qualification, without any possible sanction by the Board." We think this fear is unfounded because the "standby" will be required, as is the "permanent," to renew his license biennially: section 10 of the Funeral Director Law, as amended, 63 PS §479.10. In addition, the licensee corporation might be required to give timely notice to the board of any substitution whenever it occurs, thus enabling the latter to maintain continuity of responsibility. Further, we cannot envisage how the allowance of a "permanent standby" supervisor would create a gap in the protective sanctions guaranteed by this regulation, if such "standby" were compelled to meet the same rigors of qualification as the "permanent full-time" supervisor.

Just as there is an obvious need for a "full-time" supervising funeral director to manage the affairs of a corporation engaged in this profession, and for an orderly procedure to provide for the approval and appointment of such a supervisor under proper board sanction, so it also appears that there is a need for an orderly procedure whereby a corporation may continue its business in the event the "full-time" supervisor must necessarily be absent on vacation, or because of illness, or until the vacancy is filled upon his death or resignation. Unfortunately, the regulations promulgated by the board do not recognize or treat this problem. One alternative might be to permit the permanent supervisor short periods of absence without requiring any substitute to take his place and without stoppage of business operations. However, this would pose the immediate danger of funerals being conducted by unlicensed or unauthorized persons over whom the Board has no control.

The board's adjudication in this case indicates that it has solved the problem informally in the past by approving temporary supervisors upon telephone application. The board's findings of fact recognize this informal method and refer to it as a "recognized procedure", stating that it "can be completed in less than one hour's time." It involves a telephone call to the board's secretary advising the reason for the absence of the permanent supervisor and the name of the funeral director sought to be qualified as his temporary substitute, together with an accompanying telephone message, or letter, from the funeral director sought to be so qualified containing his agreement to act in the capacity of temporary supervisor. Approval is then given for the temporary supervisor by the executive secretary of the board under an appropriate, although apparently unwritten, delegation of power from the board. The board's adjudication does not suggest how long this informal procedure has been in existence, and it may have been created ad hoc as the result of this case. Whatever its history, we note that it did not solve Gillen's problem, and there is no question that such informal procedure derogates the philosophy of present regulation 11.2 which requires written application on special forms, followed by hearing, before the approval of a permanent supervisor may be obtained from the board. Further, such a speedy determination of the temporary supervisor's application tends to destroy the very intent and purpose for having carefully licensed supervisors. Significantly, however, this informal procedure established by the board constitutes a clear-cut admission that some provision must be made for the uninterrupted supervision and flow of the corporate business in the permanent supervisor's absence.

The selection and promulgation of an appropriate procedure covering this problem is not within the pre-

rogatives of this court. We cannot legislate the form and content of administrative regulations, our function being to pass on their validity after promulgation when such issue is properly raised, e.g., Brandt v. Vaux, 61 Dauph. 337 (1951). But if it is reasonably in the public interest to require that a corporate funeral directing establishment have a permanent supervisor, and we think that it certainly is, then it is likewise very much in the public interest to provide a standard procedure whereby a permanent supervisor may be expeditiously replaced on a temporary basis. We cannot condone the informality of the telephone procedure heretofore practiced by the board. As was so well stated in a recent law review article: "Informal procedures . . . allow a licensing board to 'coerce' the consent of licensees. . . . they give such boards the power to subject applicants for licensure to arbitrary demands and pressures in proceedings which are in the nature of 'informal' adjudications. In such a proceeding, the agency is under no obligation to specify the grounds for its decision. The decision itself is not final in the legal sense and is not appealable. Informality of this type, by promoting delay and confusion, weakens an applicant's ability to defend himself. Such wearing tactics often result in the modification of his application to suit the board's wishes or in its complete withdrawal." [1]

The history of the delay and frustrations encountered by the appellants in this case is a classic example of the foregoing statement. The board's informal procedure has been inadequate to solve the instant problem, and it portends no guarantee of successful future handling of similar situations. We would be derelict if we did not here observe, and suggest to the board, that

[1] Dean, The Opportunity To Be Heard In The Professional Licensing Process In Pennsylvania, 67 Dickinson Law Review, 31, 40 (1962).

it should give immediate consideration to the promulgation of such regulations as will properly provide for either an "assistant" or "standby" supervisor, or some other system, whereby a corporate funeral directing business will be able to continue without interruption, notwithstanding the temporary absence of its permanent supervisor.

As far as the instant appeal is concerned, there being no statutory nor regulatory provision for a "permanent standby" supervisor such as is here sought by Gillen, it is not within our judicial prerogative to direct the board to make such an appointment. Therefore, as to this issue, we affirm the action taken by the board. We are certain, however, that the board, upon reflection, and in further recognition of the problem here illustrated and emphasized, will move to promulgate regulations which will provide an appropriate procedure for Gillen and other corporate funeral directors similarly situated.

We therefore enter the following

*Order*

And now, June 17, 1963, the appeal of Gillen & Coulter Company and of Rolland T. Snee from the adjudication of the State Board of Funeral Directors entered February 14, 1963, is sustained to the extent that the said board is directed to renew the funeral director's license heretofore held by appellant Rolland T. Snee, and further, the board is directed to approve the said Mr. Snee as a temporary supervisor for the Gillen & Coulter Company during the projected absence on vacation of its permanent supervisor, one E. Burdette Robinson; as to all other issues raised by appellants, the appeal is dismissed, and the adjudication and order of the board are affirmed. The prothonotary shall notify the parties, or their counsel, of the entry of this opinion and order forthwith.