# White's Appeal.

*Municipalities—Zoning ordinance—Constitutional law—Police power—Eminent domain—Due process of law—Regulation uniform.*

1. Where a statute or ordinance interferes with the use and control of property without rational relation to public safety, health, morals or general welfare, or is a palpable invasion of rights secured by the fundamental law, the enactment thereof cannot be sustained as a legitimate exercise of the police power.

2. Police power should not be confused with that of eminent domain.

3. Under eminent domain, compensation is given for property taken, injured or destroyed, while under the police power no payment is made for a diminution in use, even though it amounts to an actual taking or destruction of the property.

4. Regulation, under a proper exercise of the police power, is due process, even though property in whole or in part is taken or destroyed.

5. If there is doubt whether a statute is enacted for a recognized police object, or if, conceding its purpose, its exercise goes too far, it then becomes the duty of the courts to declare the given exercise of the police power invalid.

6. Such investigation is concerned only with the question of whether the statute has a recognized police purpose, and whether it has a reasonable relation to the object to be attained.

7. While all property is held in subordination to governmental control, necessary to preserve the health, safety or morals of the people, such control properly exercised is not taking property without due process of law.

8. Such regulation or control does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property.

9. Regulations which do not operate on all alike cannot be justified under the police power.

10. The police power is the chief attribute of a sovereign power, and if in its exercise it conflicts with part of the Constitution, the police power in the exercise of its major objects, will prevail.

11. A zoning ordinance is unconstitutional, as an unlawful exercise of the police power, which provides that where the front walls of eighty per cent of the buildings on one side of a street between two intersecting streets are placed back from the street line, no building thereafter erected or altered shall be placed nearer to the street line than the distance established by the majority of .the eighty per cent at the time of the passage of the ordinance.

12. In such case, there is no reasonable relation between the set-back line, or space in front of houses in ordinary residence districts, and the health, safety or the morals of the community.

Argued May 12, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 7, March T., 1926, by Pittsburgh, from judgment of Superior Court, April T., 1925, No. 40, reversing decree of C. P. Allegheny Co., April T., 1924, No. 2714, dismissing appeal of E. J. White et ux., in proceedings under a zoning ordinance. Affirmed.

Appeal from judgment of Superior Court. See 85 Pa. Superior Ct. 502.

The opinion of the Supreme Court states the facts.

*Error assigned* was, inter alia, judgment of Superior Court, quoting it.

*Thomas M. Benner,* City Solicitor, for appellant.— The public policy of a state is determined by its constitution, its statutes, and its court decisions. Unquestionably, the public policy of Pennsylvania as exhibited by our statutes is that urban property within the State shall be regulated.

Historically speaking, the first zoning law was passed in 1908 by the State of Massachusetts, dividing the City of Boston into two height districts: Welch v. Swasey, 193 Mass. 364.

The ordinance was proper: Hadacheck v. Sebastian, 239 U. S. 394; Cusack v. Chicago, 242 U. S. 526; Noble State Bank v. Haskell, 219 U. S. 104; Munn v. Illinois, 94 U. S. 113.

Ordinances such as the one here under consideration have met with the approval of the courts of New York, Massachusetts and Kansas: Lincoln Trust Co. v. Williams, 229 N. Y. 317; Re Opinion of Justices, 234 Mass. 597; Ware v. City of Wichita (Kan.), 214 Pac. 99.

It is primarily for the legislature to consider and decide on the fact of a danger, then meet it by a proper remedy: Stafford v. Wallace, 258 U. S. 495; Mahon v. Coal Co., 274 Pa. 489; American Reduction Co.'s Permit, 72 P. L. J. 321; Hyett v. Pittsburgh, 73 P. L. J.

*Frank C. McGirr,* for appellees.—Section 32 of the Zoning Ordinance cannot be sustained as a lawful exercise of police power in the circumstances disclosed in the record: Eubank v. Richmond, 226 U. S. 137; Bryan v. Chester, 212 Pa. 259.

It is the doctrine of all the cases, in all the states (except Wisconsin), as well as the United States Supreme

Court, that the police power cannot be exercised for esthetic purposes only.

The zoning acts provide that ordinances to be valid must be in the interests of public health, public safety, and general welfare: Mellon v. Pittsburgh, 21 P. L. J. 155; Perkins v. Phila., 156 Pa. 554; Moll v. Morrow, 253 Pa. 442; Truax v. Corrigan, 257 U. S. 312; Buchanan v. Warley, 245 U. S. 60; Mahon v. Coal Co., 274 Pa. 489; Coppage v. Kansas, 236 U. S. 1.

*Edward M. Bassett,* amicus curiæ, representing the Pennsylvania Association of City Planning Commissioners, filed a printed brief, adding, to the city solicitor's cases, the following: Wolfsohn v. Burden, 241 N. Y. 288; People v. N. Y. City Board of Appeals, 234 N. Y. 484; Ex Parte Hadacheck, 165 Cal. 416, 239 U. S. 394; Brett v. Brookline Bldg. Comrs., 250 Mass. 73.

OPINION BY MR. JUSTICE KEPHART, June 26, 1926:

The City of Pittsburgh, pursuant to a statutory authority, passed a zoning ordinance. It provided a comprehensive plan to divide the city into districts and regulate the use of the land and buildings thereon. Briefly, the ordinance divided the city into five use districts, a heavy industrial, a light industrial and a commercial district, an "A" residence district, and a "B" residence district, and specified from eight to thirty-five prohibited uses for each district. Many restrictions are imposed on the use and occupancy.

In the division relating to residence districts, it is provided that yards must have a certain strip of ground around a building. The pertinent part of section 32 is as follows:

"First area district. In this district the minimum dimensions of yards and other open spaces, and the area of lot required per family houses thereon, shall be as follows:

" 'Front yard:

"'(a) There shall be a front yard having a depth of not less than fifteen (15) feet.

"'(b) When the front wall of eighty (80) per cent of all the buildings on one side of a street between two (2) intersecting streets have been kept back from the street line, no building hereafter erected, or altered, shall be placed nearer to the street line than the distance established by the majority of the eighty (80) per cent at the time of the passage of this ordinance; provided that this regulation shall not be so interpreted as to reduce the buildable width of a corner lot facing on an intersecting street, of record at the time of the passage of this ordinance, to less than twenty-five (25) feet.  (c) ......'"

Appellees enclosed an open porch at the front of their house, converting it into a room.  This violated the above section of the zoning ordinance.  The city officials ordered the removal of this "illegal structure," and appellees took an appeal to the common pleas, pursuant to the provisions of the Act of May 1, 1923, P. L. 122, attacking the ordinance on the ground that it violated the 14th Amendment to the Constitution of the United States.  The court below upheld it, but was reversed by the Superior Court, which declared the quoted portion of the ordinance invalid.  The case is here on appeal by the city.  Elaborate arguments covering the ordinance in its entirety are presented.  We will discuss only so much of the subject as may be helpful to decide this case and possibly to avoid future controversies.

The police power is a function of government to be exercised in varying degrees in certain spheres of action. It is the chief attribute of a sovereign power, for if in its exercise there is conflict with parts of the Constitution, the police power exercised to promote its major objects will prevail; for illustration, pure food and prohibition laws.  Its chief sphere of action concerns immediately a restriction on the use of property or the conduct of persons that may be detrimental to public health, morals and safety.  Where such an act promotes

any of these objects, the limit of its exercise may be their actual attainment, if such thing is possible. Where the power is subject to constitutional restrictions, it concerns limitations on the use of property, such as the regulation of public service companies (Munn v. Illinois, 94 U. S. 113, 124), quasi public callings, and extends to great public needs (Camfield v. U. S., 167 U. S. 518), in such ways as are sanctioned by usage, or are held by strong or preponderant opinion, to be immediately necessary to the public welfare: Noble State Bank v. Haskell, 219 U. S. 104, 111.

Police power should not be confused with that of eminent domain. Police power controls the use of property by the owner, for the public good, its use otherwise being harmful, while eminent domain and taxation take property for public use. Under eminent domain, compensation is given for property taken, injured or destroyed, while under the police power no payment is made for a diminution in use, even though it amounts to an actual taking or destruction of property. Under the 14th Amendment, property cannot be taken except by due process of law. Regulation under a proper exercise of the police power is due process, even though a property in whole or in part is taken or destroyed. The conditions on which its legitimate exercise is predicated should actually exist or their happening be so likely that restraint is necessary, similar to a court issuing a restraining order for injuries done or threatened to persons or property. Likewise, there should be a reasonable and substantial relation between the thing acted on and the end to be attained, one that promotes health, safety or general welfare, necessary to the common good, and a reasonable demand for regulation, not one that is merely an unnecessary "experimentation [or interference] with the fundamental rights of the individual": Truax v. Corrigan, 257 U. S. 312, 338.

While the tribunal to determine the proper exercise is in the first instance the legislature, the ultimate decision

rests with the courts. If after investigating there is doubt as to whether the statute is enacted for a recognized police object, or if, conceding its purpose, its exercise goes too far, it then becomes the judicial duty and declare the given exercise of the police power invalid: Nolan v. Jones, 263 Pa. 124, 127; Miller v. Los Angeles, 234 Pac. (Cal.) 381; Walls v. Midland Carbon Co., 254 U. S. 300. "The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police power is not final or conclusive, but is subject to the supervision of the courts": Lawton v. Steele, 152 U. S. 133, 137. The power of judicial investigation does not concern itself with the wisdom of the policy emanating from the legislative branch, or whether the best of all possible means of achieving the desired result has been selected. It is concerned only with the questions of whether the statute has a recognized police purpose, and whether it has a reasonable relation to the object to be attained.

Generally, the right concerns, as here, property and rights issuing out of it. No matter how seemingly complete our scheme of private ownership may be under our system of government, all property is held in subordination to the right of its reasonable regulation by the government clearly necessary to preserve the health, safety or morals of the people. Obedience to such regulation is not taking property without due process; that clause does not qualify the police power: C., B. & Q. Ry. Co. v. Drainage Commissioners, 200 U. S. 561; Salem v. Maynes, 123 Mass. 372; In re Cherry, 201 App. Div. N. Y. 856, 193 N. Y. S. 57, affirmed 234 N. Y. 607, 138 N. E. 465. Property is held under the implied obligation that the owner shall use it in such way as not to be injurious to the community: Windsor v. Whitney, 95 Conn. 357, 111 Atl. 354.

The zoning ordinance under consideration was enacted pursuant to authorizing acts for cities of the second class, such as Pittsburgh. Act of June 21, 1919, P. L. 570; Act of May 11, 1921, P. L. 503; Act of May 1, 1923, P. L. 122. Its preamble, and that of the act, states it is for "public welfare, safety and health," but such legislative declaration is not conclusive of the question.

The purpose of the ordinance is to bring about an orderly development of cities, to establish districts into which business, commerce and industry shall not intrude, and to fix certain territory for different grades of industrial concerns. Such limitations may, in a general sense, be a reasonable exertion of the police power. But, while the ordinance as to its general structure may be valid, it must, in specific application to any of its various phases, be tested by the principles discussed. The ordinance as a whole is similar in many respects to the zoning ordinances in other cities. It is impossible to reconcile the ruling of the Supreme Courts of the various states on the question of constitutionality of the ordinances. Each case must of course be decided on its own facts. Therefore we leave other applications open for relief.

There is one matter that is quite certain, the power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety and general welfare. The exercise must have a substantial relation to the public good within the spheres held proper. It must not be from an arbitrary desire to resist the natural operation of economic laws or for purely æsthetic considerations: Welch v. Swasey, 214 U. S. 91; Coppage v. Kansas, 236 U. S. 1, 18; Boyd v. United States, 116 U. S. 616, 635; St. Louis Poster Advertising Co. v. St. Louis, 249 U. S. 269; Cooley on Constitutional Limitations, 768. While such regulations may not physically take the property, they do so regulate its use as to deprive the

owner of a substantial right therein without compensation. "We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change": Pennsylvania Coal Co. v. Mahon, 260 U. S. 393, 416.

The particular part of the ordinance here challenged is referable to none of the authorizing purposes the police power is intended to promote. On what theory can this set-back line be justified as an effort to promote the general welfare? The ordinary use permits the owner to place his house where he wills; but this general welfare is not based on artistic taste, or repugnancy to the desires of a few. All grants of power are to be interpreted in the light of the maxims of Magna Charta and the common law as transmuted into the bill of rights; and those things which these maxims forbid cannot be regarded as within any grant of authority made by the people to their agents: Cooley, Const. Lim. 209. "To secure their property was one of the great ends for which men entered society. The right to acquire and own property, and to deal with it and use it as the owner chooses so long as the use harms nobody, is a natural right. It does not owe its origin to constitutions. It existed before them. It is a part of the citizen's natural liberty,—an expression of his freedom,—guaranteed as inviolate by every American bill of rights": Spann v. Dallas, 111 Tex. 350, 235 S. W. 513. What reasonable relation has the set-back line, or space in front of houses in ordinary residence districts, to the health, safety or morals of the community? It certainly would not disturb the comfort of the ordinary person; it is not offensive to the eye, nor a source of sickness; it does not materially increase or decrease fire hazards. To bring this, and other like regulations, under the police power, would be to sweep away constitutional guarantees on the ownership of property. It is regulation run mad.

The application and consequence of this ordinance is a gross discrimination in that it does not bear alike on all persons living within the same territory. Regulations which do not operate on all alike cannot be justified under the police power. Here it affects property differently on adjoining blocks, or within the same block or on opposite sides of the street. As Judge LINN of the Superior Court states, "The ordinance purports to zone the entire city—built-up as well as unbuilt. Section 32 (b) establishes a building line on streets wholly or partially built up. Consideration of the section will disclose that the line may be further back from the street line on one side of the street than on the other, and even on the same side of the street its distance from the street line may vary in different squares, its location depending wholly on how far back (if at all) a house or houses had already been built, and if but one house had been built, its line would seem to control all the other lot owners. If no house had been built, 32 (a) would seem to require all builders to recede at least fifteen feet." We may add, if there is only one building erected in a block, placed back, say, 100 feet, from the street line, then all other buildings afterwards erected in the block, whether eighty per cent or more of the total number, would have to conform to this one. If the lots in a square were of different depths, the owners of the short lots might not be able to build at all on their lots, if they had to maintain the same distance back from the street as the eighty per cent of the buildings already erected on longer lots. No provision is made either for the difference in the character of the houses or their width or depth. They may all be of different sizes. It would be confiscatory to enforce such an ordinance. It applies only to one side of the street in blocks where eighty per cent of the houses are already set back a uniform distance.

Where a statute or ordinance interferes with the use and control of property without rational relation to

public safety, health, morals or general welfare, or is a palpable invasion of rights secured by the fundamental law, the enactment cannot be sustained as a legitimate exercise of police power.  In Eubank v. Richmond, 226 U. S. 137, an ordinance similar to the part here challenged was declared a violation of the 14th Amendment.  See also Bryan v. City of Chester, 212 Pa. 259; People v. City of Chicago, 261 Ill. 16, 103 N. E. 609; Opinion of the Justices, 128 Atl. (Me.) 181; Byrne v. Maryland Realty Co., 129 Md. 202, 98 Atl. 547; St. Louis v. Hill, 116 Mo. 527, 22 S. W. 861; Romar Realty Co. v. Haddonfield, 96 N. J. L. 117, 114 Atl. 248; Ignaciunas v. Risley, 98 N. J. L. 712, 121 Atl. 783; Plymouth v. Biglow, 129 Atl. (N. J.) 203; People v. Calder, 89 App. Div. 503, 85 N. Y. S. 1015; Fruth v. Board of Affairs, 75 W. Va. 456, 84 S. E. 105; 1 Lewis on Eminent Domain, 3d ed., section 227; 2 Dillon on Municipal Corporations, section 695; Tiedman on Police Power, section 112a, which deal with the question before us.

The decree of the Superior Court is affirmed, at the cost of appellant.