## City of Nanticoke v. Stolarski

*R. A. Livingston,* for plaintiff.

*Peter Kanjorski,* for defendant.

McLEAN, P. J., December 17, 1935.—This case is before us upon an appeal from a summary conviction of defendant for the violation of an ordinance of the City of Nanticoke, the title and pertinent provisions of which ordinance are as follows:

"An ordinance defining and regulating barber shops within the City of Nanticoke.

"Section 3. All persons engaged in or desiring to engage in the barber business shall apply to the license board of the city of Nanticoke for a license for said shop or business, and the said license shall be issued when the said place shall have received an inspection from the health officer of the city of Nanticoke, who will make his report to the proper officials of said city, and if said business is approved by said health officer, then a permit shall be issued to conduct said business. Said permit shall be plainly displayed in each place of business and shall be valid for a period of one year from date of issuance. But the said permit may, however, be revoked or suspended at any time for violation of this ordinance or the Health Laws of Pennsylvania. All permits shall expire on December 31 of each year. The health officer or his assistants shall have the right at any time to inspect said place of business for the purpose of determining whether or not any violation of health ordinance exists.

"Section 4. It shall be unlawful for any barber shop or public place, wherein barbering is done, to open for business earlier than 8:30 a. m. on week days or to remain open longer than 6:30 p. m. on week days, with exception of Saturdays, on which days said shops and places of business must close no later than 9 p. m. The fee for inspection and certificate shall be an annual one of three dollars."

Defendant was convicted of having violated section 4 of the above ordinance in that he kept open for business

after 6:30 p. m., on February 20, 1935, a barber shop conducted by him.

Defendant contends that the ordinance is not a valid exercise of the legislative power of the city: (1) In that the city was without authority to require those engaged in the business of barbering to submit to inspection and secure licenses before engaging in said business; (2) in that insofar as the ordinance attempts to regulate the opening and closing hours of barber shops it was an unlawful interference with the rights of those engaged or intending to engage in said business.

The legislature has deemed it wise to regulate by statute the conduct of barber shops, etc., by an Act of June 19, 1931, P. L. 589, and an amendment thereto enacted on May 9, 1935, P. L. 158, which provides, inter alia, as follows:

"Section 15-A. Nothing contained in this act, or the act to which this is an amendment, shall be construed as prohibiting any municipality from adopting appropriate ordinances, not inconsistent with the provisions of this act or the rules and regulations adopted thereunder, as may be deemed necessary to promote the public health, and regulate barber shops, schools, and colleges."

It will be observed that the above amendment was passed at a time subsequent to the enactment of the ordinance in question.

It has been held that the Act of 1931, supra, supersedes and nullifies all prior local ordinances and their regulations on the same subject: City of Chester v. Chouch, 19 D. & C. 457.

In view, however, of the provisions of the Act of 1935 quoted above, we are not prepared to say that the ordinance passed in the interim, after the passage of the Act of 1931 and before the effective date of the Act of 1935, is not a valid exercise of authority in requiring those engaged in the barber business to secure a license as provided in section 3 of the ordinance in question.

It is contended by the city that the regulation of barber shops, as contained in the fourth section of the ordinance, is a valid exercise of its authority, in order that the inspection of barber shops by the health officer of the city may be made at convenient times, to wit, within the period of the day during which barber shops, by the terms of the ordinance, are permitted to remain open.

If we are to assume that the Act of 1931 and its amendment of 1935 definitely authorize municipalities to adopt such ordinances as may be deemed necessary to promote public health and to regulate the conduct of barber shops, then we conclude that this legislative authority in cities is limited by the same rules as may apply to acts of the legislature.

The legislature of this State has frequently enacted laws regulating the conduct of certain businesses and professions, among other optometry. What the courts have said in this regard may likewise be applied to the licensing of barbers, or any other business the conduct of which pertains to the public health.

In this connection Mr. Justice Kephart, in Harris v. State Board of Optometrical Examiners, 287 Pa. 531, has enunciated the broad principles applicable to the exercise of police power:

"The legislature may define and regulate the practice of optometry and, to that end, prescribe reasonable qualifications to be possessed by those who desire to engage in the practice, and to provide reasonable means by which such qualifications may be ascertained to prevent those who do not possess them from practicing: McNaughton v. Johnson, 242 U. S. 344. But he urges the regulations forming the basis of the charges against him were unreasonable and in violation of his constitutional right. Are, then, the challenged regulations reasonable and appropriate to accomplish a legitimate object within the state's police power?

"The Optometrical Act was passed because of the decision in Martin v. Baldy, 249 Pa. 253, where it was held

that an optometrist was not a practitioner of medicine within the meaning of the acts relating to that practice. Optometry is defined as the 'employment of any means other than the use of drugs for the measurement of the powers of vision, and the adaptation of lenses for the correction and aid of the vision of human beings.' The preamble of the act states the legislative purpose to be the safety of the citizens, who demand that their eyesight be protected from the hands of incompetent persons. The purposes of the act regulating the practice of optometry as it relates to the health of the people is a lawful exercise of the police power by the legislature: McNaughton v. Johnson, supra.

"Therefore the manner, scope and extent of the practice are the subjects of legislative inquiry and control; but the regulations must be reasonable. The legislature under the police power does not possess the power to enact rules which have no substantial relation to the end to be attained. It cannot unreasonably prevent or limit the practitioner from acquiring the business for which he was licensed. Legislatures do not have the power, under the guise of police regulation, to arbitrarily invade the personal right and liberty of the individual. Its determination of the extent of its power is not final or conclusive: White's App., 287 Pa. 259. If it pass an act, ostensibly in the exercise of the police power, but which unnecessarily interferes with the personal liberty of the citizen, the courts may examine the act and determine whether it relates to the objects which the exercise of the police power is designed to, and does, secure: White's App., supra; Chenowith v. State Board, 57 Colo. 74; Dobbins v. Los Angeles, 195 U. S. 233.

"The manner or mode of exercising a lawful occupation may be regulated only in the interest of public health or to secure safety to the citizens. The legislature cannot adopt, as regulations, the ethics of the profession which may limit the practice to be secured or the method of procuring it."

The limitations of police power as exercised by either the legislature or the municipality have been defined by the Supreme Court in White's Appeal, 287 Pa. 259:

"Where a statute or ordinance interferes with the use and control of property without rational relation to public safety, health, morals or general welfare, or is a palpable invasion of rights secured by the fundamental law, the enactment thereof cannot be sustained as a legitimate exercise of the police power. . . .

"Regulation, under a proper exercise of the police power, is due process, even though property in whole or in part is taken or destroyed. . . . .

"Such investigation is concerned only with the question of whether the statute has a recognized police purpose, and whether it has a reasonable relation to the object to be attained.

"While all property is held in subordination to governmental control, necessary to preserve the health, safety or morals of the people, such control properly exercised is not taking property without due process of law.

"Such regulation or control does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property.

"Regulations which do not operate on all alike cannot be justified under the police power."

In considering section 4 of the ordinance we are concerned with the question whether this provision has a recognized public purpose, and whether it has a reasonable relation to the object to be attained.

The object of the act of assembly above referred to, as set forth in its title, is as follows:

". . . to promote the public health and safety, by providing for the examination and licensure of those who desire to engage in the occupation of barbering; regulating barber shops . . . conferring certain powers and duties on the Department of Public Instruction; and providing penalties".

The object of the ordinance is to promote public health, and it requires that those engaging in the barber business shall obtain a license after an inspection by the health officer of the city, and provides further "that the health officer or his assistant, shall have the right at any time to inspect said place of business for the purpose to determine whether or not any violation of health ordinance exists."

The statute permits the inspection of barber shops during business hours: Section 10 of the Act of 1931, supra.

The ordinance, section 3, permits the health officer to make inspections at any time.

The object of the ordinance is public health, and this is to be attained by an inspection by the health officer at any time. Can it then be said that the provisions of section 4, defining hours of opening and closing, has any reasonable relation to the inspection to be made by the health officer?

If the barber shops were permitted to open earlier than 8:30 a.m. or close later than 6:30 p.m., would proper inspection by the health officer be hindered? On the other hand, evidence was produced at the hearing, upon the question of reasonableness of the restrictions imposed, to the effect that miners living in the community, and those engaged in business during the day, are inconvenienced by the restrictions and that patrons are unable conveniently to visit barber shops during the limited period.

The regulation is a clear interference with the use and control of property, and we are unable to discover what reasonable relation the provision of the ordinance regulating the time of opening and closing of barber shops bears to the public safety, health, morals, or general welfare. Obviously the health, safety, and morals of neither barbers nor their patrons are served by this regulation.

The precise question has been decided and like provisions of ordinances held unreasonable in City of Alexandria v. Hall, 171 La. 595, 131 So. 722; Chaires et al. v. City of Atlanta, 164 Ga. 755, 139 S. E. 559; Ex parte Jentzsch, 112 Cal. 468, 44 Pac. 803.

In Falco v. Atlantic City et al., 99 N. J. L. 19, 122 Atl. 610, a similar ordinance was upheld on the ground that permitting barber shops to remain open until all hours of the night would render ready and adequate inspection inconvenient and difficult. However, the inconvenience of the health officer in making inspections is not the criterion; the regulation must bear a reasonable relationship to the public safety, health, morals, or general welfare. We cannot escape the conclusion that the regulation is a palpable invasion of the rights of those engaged in the barber business.

We conclude that section 4 of the ordinance, for the reasons given above, is invalid and unenforceable, and, as the defendant is here charged with the violation of that section, we find defendant not guilty.