# Cohen et ux. v. Abington Township Zoning Board of Adjustment

*Raymond Pearlstine* and *Morris N. Greber*, for appellants.

*David E. Groshens*, for zoning board of adjustment.

CORSON, J., July 9, 1941.— . . . Appellants in the present case are the owners of an unimproved lot of land fronting on Limekiln Pike and Fairview Avenue, in the Township of Abington, this county. As already noted in the findings of fact this lot of ground is situate in a district classed as "F commercial". Appellants are desirous of erecting a gasoline station on said property. The Zoning Ordinance of Abington Township provides that a gasoline filling station must take the form of a variance, or an exception to the zoning ordinance is to be allowed or not allowed by the board of adjustment. The proposed gasoline station fronts on a section of road which receives traffic from the northwest from Mount Carmel Avenue and Limekiln Pike. At the southeasterly end of the section which is a short bottle-neck, traffic enters from the southwesterly side of the so-called bottle-neck and either directly opposite, or in a southerly direction from, appellants' property, are located a diner, an Esso gasoline filling station, a Sunoco station, and a Socony-Mobil drive-in filling station, at the southeasterly end of the bottle-neck, at the intersection of Edge Hill Road, Mount Carmel Avenue, and Limekiln Pike.

From the number of gasoline stations already located there it would seem to be an ideal place for gasoline stations. The board of adjustment, in refusing appellants' application, expressly stated that the application was not refused because it would make too many gasoline stations at this point. The board of adjustment may well have had in mind the thought that gasoline stations are more or less of a necessary evil and that if it is necessary to have them in the township it would

be better to segregate them in a limited district rather than have them scattered at various places throughout the township. The only reason given by the board of adjustment for refusing the application for a permit was the feeling of the board that to grant the application and allow the station to be erected would create a traffic hazard at that particular point. No testimony was given, however, before the board of adjustment as to the effect of gasoline stations upon traffic hazards. The court, however, has had the benefit of expert and convincing testimony as to the effect of gasoline stations in creating traffic hazards. The testimony of appellants' expert as to the freedom from traffic accidents involving pedestrians walking in front of gasoline service stations at first seemed surprising but the writer of this opinion in thinking back is unable to recall a single case tried before him in civil court within the last 10 years involving injuries to a pedestrian by a car entering or leaving a gasoline service station, possibly because of the fact that since cars entering service stations are expecting to stop within a few feet the drivers have them under better control than when they are crossing street intersections or the usual pedestrian street crossings.

We sympathize with certain of the householders who reside in the immediate vicinity but under the zoning act such householders have had notice that gasoline stations might be erected in that vicinity. Some of the objectors contend that cars coming southeast on Mount Carmel Avenue would have to cross three lanes of traffic in order to get into the proposed station. An examination of the plan, however, shows that this is not entirely correct because directly opposite the proposed station all traffic is merged into two lanes of traffic on the Limekiln Pike or Mount Carmel Avenue, whichever it might be called at that point. The board of adjustment granted a permit under the zoning ordinance for the Socony-Mobil station at the southeasterly end

of the bottle-neck, and for cars on Edge Hill Road to enter such station from the northeast such cars would have to cross two lanes of traffic on Mount Carmel Avenue, as extended southeast of the bottle-neck, and two more lanes of traffic on Limekiln Pike as it enters the intersection from the southwest. Cars coming in a southeasterly direction, however, on Mount Carmel Avenue would have a chance to make a right turn into any one of three gas stations which the drivers might choose. It would only be in the case that he particularly favored the gasoline sold at appellants' gas station that a driver would be forced to make a left turn at all. Traffic coming in a northwesterly direction through the bottle-neck at the present time is forced to make a left turn across traffic to enter any one of the three present gas stations. The proposed gas station on the right would enable such drivers to obtain gasoline by making a right turn into the proposed station. This should, to some extent at least, reduce left turns across southbound traffic in the bottle-neck. The taking down of the present line of trees in front of the proposed station will give northbound drivers a better view of traffic coming south on Limekiln Pike.

Upon the findings of fact and for the reasons given, we feel that appellants should be permitted to erect a gasoline service station upon the property and that to refuse such permit was an abuse of discretion upon the part of the board of adjustment. As the Supreme Court said in White's Appeal, 287 Pa. 259 (1926), at page 266:

". . . the power to . . . regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety and general welfare. The exercise must have a substantial relation to the public good within the spheres held proper. It must not be from an arbitrary

desire to resist the natural operation of economic laws or for purely aesthetic considerations."

In this opinion we do not mean to intimate that there are not cases where conditions may be such that the operation of a gasoline station may create such a traffic hazard as to justify the refusal of a permit by the board of adjustment. (See opinion of Knight, P. J., handed down July 7, 1941, in Land Company v. Rockledge Borough, Montgomery County Court of Common Pleas, no. 23, February term, 1941.) But we feel that under the testimony and the admitted facts and circumstances in the present case, and particularly where permits have been granted for so many gasoline stations that are adjacent to the proposed station, the action of the board in refusing the permit was arbitrary, and without any substantial relation to the public health, safety, or general welfare. See Standard Investments Corporation's Petition, 341 Pa. 129 (1941).

The court, upon the findings of fact and for the reasons given in the discussion, reaches the following

### Conclusion of law

That the action of the board of adjustment in refusing a permit to appellants was arbitrary, unreasonable, and an abuse of discretion insofar as it affected appellants' property.

We, therefore, enter the following decree:

And now, July 9, 1941, the appeal is sustained and the action of the Board of Adjustment of Abington Township in refusing a permit for the erection of the within-named gasoline station is set aside and such board is directed to grant to appellants permission to erect a drive-in gasoline filling station in accordance with the blueprint and specifications attached to the application. An exception is allowed to the board of adjustment.