## Devener v. Pennsylvania Department of Transportation

*Heath L. Allen* of *Keefer, Wood, Allen and Rahal,* for plaintiffs.
*Jerry R. Richwine, Assistant Attorney General,* for defendant.

SHADLE, *P.J.,* December 23, 1977 — On petition of plaintiffs a board of viewers was appointed to assess damages allegedly suffered to land owned by plaintiffs for which they complained defendant was liable. Defendant filed preliminary objections to the appointment of viewers pursuant to section 504

of the Act of June 22, 1964, P.L. (Spec. Sess.) 84, as amended, 26 P.S. §1-504. An evidentiary hearing was held to determine whether plaintiffs suffered a compensable injury for which defendant was liable. See Jacobs v. Nether Providence Township, 6 Pa. Commonwealth Ct. 594, 297 A. 2d 550 (1972).

Plaintiffs own a tract of land in Penn Township, York County, on which they operate a commercial airport consisting of two airplane runways and other improvements. In 1974, the York County Industrial Development Authority constructed on land adjacent to that of plaintiffs a warehouse to a height of 24 feet. Such building was within the "airport approach area" of the north end of one of plaintiffs' runways identified as Runway 16-34. By section 1 of the Act of July 27, 1953, P.L. 641, as amended, 2 P.S. §1458, an airport approach area is defined as "all that area lying within and below an inclined plane, starting at each end of each runway or landing strip, of a commercially licensed airport, and extending outward horizontally for a distance of 1000 feet at a ratio of 1 foot of height for each 20 feet of distance from each end of the runway or landing strip, and having a width of 300 feet."

On August 16, 1974, defendant, through its Bureau of Aviation, notified plaintiffs that such building erected by the Authority was "in violation of the Pennsylvania Aeronautical Code and the parties involved will be cited and appropriate action will be taken." By the same notice, defendants were advised that "the Bureau of Aviation requests Devener Airport mark Runway 16's North end with displaced threshold markings. Please locate Runway end 150 feet Southward and publish the Runway length of Runway 16 as 1600 feet on all airport documents." Plaintiffs thereupon changed the markings as requested.

On May 28, 1975, defendant caused a criminal complaint to be filed againt the party responsible for erection of the building in violation of section 2 of the Act of 1953, supra, as amended, 2 P.S. §1459. This makes it unlawful to erect or maintain any building or obstruction within an airport approach area, and provides that the person doing so "shall, upon conviction . . . be fined . . . and, in default of payment thereof, shall be imprisoned . . . Each day's continuation of a violation of this section shall be deemed a separate and distinct offense." The magistrate before whom it was filed dismissed that complaint. Another such prosecution was instituted on October 14, 1975, which likewise was dismissed upon advice of the District Attorney of York County. No further prosecutions were brought.

Plaintiffs claim that the requirement by defendant that the runway be reduced in length by 150 feet from 1,750 feet to 1,600 feet deprived them of the effective use thereof and therefore constituted a de facto taking or inverse condemnation for which they are entitled to compensation. Defendant denied that its action in fact deprived plaintiffs of effective use of the runway, or that it constituted a "taking" for which it was liable in damages.

The parties offered conflicting evidence as to whether the existence of the building and the "displacement" of the runway did prevent effective use of the runway. We find that these conditions did have the practical effect of reducing the usable length of the runway by 150 feet, and that, as reduced, the runway was rendered unsafe for use by certain aircraft under certain circumstances. However, this finding does not resolve the dispute. The questions remain whether the reduction of the runway constituted a "taking," and whether it was defendant who did the "taking."

Section 201(g) of the Act of May 25, 1933, P.L. 1001, as amended, 2 P.S. §1463(g), makes it the duty of the Bureau of Aviation to "[S]upervise and regulate the safety, adequacy, and sufficiency of all landing areas, commercial airports, and air navigation facilities and equipment used, or to be used, in private or commercial flying." It was pursuant to this authority that defendant caused the runway markings to be displaced.

Viewed in this light, it is clear that defendant's action did not constitute a "taking," and it was not defendant who "took" the 150 feet of runway. The building was improperly erected by a third party for whose conduct neither plaintiffs nor defendant were responsible. It was only after such hazard was created, however improperly, that defendant was required under the Act of 1933, supra, to instruct plaintiffs, the airport owners and operators, to mark and adjust the runway to avoid the danger which existed.

Plaintiffs refer to the statement in Griggs v. Allegheny County, 402 Pa. 411, 168 A. 2d 123 (1961), that "A 'taking' occurs when the entity clothed with the power of eminent domain substantially deprives an owner of the beneficial use and enjoyment of his property."

However, in the context of the instant case, defendant's action in reducing the runway length was not taken to accomplish some purpose or benefit for itself, but in the exercise of its police power for the protection of the public. The distinction between the latter type of action and that resulting from eminent domain was pointed out in White's Appeal, 287 Pa. 259, 134 Atl. 409 (1926), as follows:

"Police power should not be confused with that of eminent domain. Police power controls the use of

property by the owner, for the public good, its use otherwise being harmful, while eminent domain and taxation take property for public use. Under eminent domain, compensation is given for property taken, injured or destroyed, while under the police power no payment is made for a diminution in use, even though it amounts to an actual taking or destruction of property. Under the 14th Amendment, property cannot be taken except by due process of law. Regulation under a proper exercise of the police power is due process, even though a property in whole or in part is taken or destroyed. . . .

"The power of judicial investigation does not concern itself with the wisdom of the policy emanating from the legislative branch, or whether the best of all possible means of achieving the desired result has been selected. It is concerned only with the questions of whether the statute has a recognized police purpose, and whether it has a reasonable relation to the object to be attained."

Plaintiffs argue that defendant's action in reducing their runway could not be justified under the police power because it was taken to protect the single owner of the building and not the general public. This clearly is incorrect. The runway markers were revised to protect the public from the danger of an airport safety hazard, not for the purpose of protecting the building.

Plaintiffs further contend that the effect upon them of a "taking" resulted from defendant's *inaction* by not compelling the offending third party to remove the encroachment it had created. The concept of a condemnation of property of an owner as a result of *inaction* by the official body with respect to action by a *third party* on *adjoining* property is

novel on its face. Conceding for discussion that such concept may exist, we are unable to conclude that defendant's inaction, if such it was, here constituted a condemnation of plaintiffs' premises. Defendant had no specific statutory authority to compel abatement or removal of the building such as is given to political subdivisions which adopt airport zoning regulations under sections 4 and 13 of the Act of April 17, 1945, P.L. 237, 2 P.S. §§1553, 1562. Neither is it given such authority by section 2 of the Act of 1953, supra, which made such encroachment unlawful. That act merely provided for a fine or imprisonment for violations. It is true that section 2 purports to make each day the obstruction continues a distinct offense. Plaintiffs suggest that defendant could, and should, have continued to prosecute the building owner daily until the building was removed. We leave open the question of whether such endless successive prosecutions would be valid, or whether they would have the indirect effect of compelling removal of the building. In any event, defendant did institute two such prosecutions, both of which were dismissed. It, therefore, is difficult to understand what more defendant could have done in this respect, even if it was subject to the burden which plaintiffs suggest.

It may be that plaintiffs have an equitable remedy against the offending property owner for the erection and maintenance of what may constitute a private nuisance, or an action for damages for the injury to their premises. However, we conclude that defendant's action, taken to reduce the risk to the public resulting from the use of plaintiffs' airport after such use was rendered hazardous by the erection of the building on adjoining premises by such third party, was both justified and required in

the exercise of its police power. Consequently, defendant's action did not constitute a "taking" of plaintiffs' premises within the meaning of the eminent domain law for which it is liable in damages to plaintiffs. Plaintiffs, therefore, are not entitled to a board of viewers to assess any such damages.

## ORDER

And now, December 23, 1977, defendant's preliminary objections to the appointment of viewers are sustained, the appointment of the board of viewers is revoked, and plaintiffs' petition is dismissed.