S. H. Goss, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Agriculture, Respondent.

Central Chemical Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Department of Agriculture, Respondent.

Argued February 5, 1981, before Judges BLATT, MacPHAIL and WILLIAMS, JR., sitting as a panel of three.

*David C. Keiter,* with him *Wayde P. Seidensticker, Seidensticker & Ross,* for petitioners.

*John E. Childe, Jr.,* for respondent.

OPINION BY JUDGE MacPHAIL, April 15, 1981:

This is a consolidated appeal brought by S. H. Goss, Inc. and Central Chemical Corp. (Petitioners) from two orders of the Pennsylvania Department of Agriculture (Department) which upheld a total of 125 penalties assessed against Petitioners for deficiencies in fertilizers which they manufactured.[1] The penalties were imposed pursuant to the Pennsylvania Fertil-

---

[1] S. H. Goss, Inc. was assessed for 39 penalties totaling $24,-849.66 and Central Chemical Corp. was assessed for 86 penalties totaling $31,411.35. The penalties were assessed during 1978.

izer, Soil Conditioner and Plant Growth Substance Law (Law).[2] We affirm.

Petitioners in the instant case are manufacturers of fertilizer which is sold in bags or in bulk to consumers. Under the Law it is the duty of the Secretary of Agriculture (Secretary) to sample, inspect and analyze such fertilizer to determine whether the product meets the guarantee as stated on its label. For example, a sample of a fertilizer labeled "10-10-10" would be analyzed by the Department to determine if it contains, within specific investigational allowances, 10 percent nitrogen, 10 percent phosphoric acid and 10 percent potash. If any ingredient, when analyzed, falls below the guarantee a penalty of ten times the value of the deficiency must be assessed by the Secretary. Section 7 of the Law, 3 P.S. §68.7. The Secretary is given the power to promulgate rules and regulations regarding methods of sampling, inspection and analysis and to establish minimum standards for such sampling, inspection and analysis. Section 6(b) of the Law, 3 P.S. §68.6(b).

Petitioners challenged the Department's assessment of penalties on several grounds including the inadequacy of the sampling procedures used, lack of precision in the operation of the laboratory (the chemical analysis procedure itself has not been challenged) and the failure to include sufficient sampling error in the investigational allowances. After several hearings on the matter during which an extensive record was developed, the hearing examiner found each of the challenges to be without merit. The Secretary adopted the examiner's findings and ordered payment of the assessed penalties. These appeals followed.

---

[2] Act of May 29, 1956, P.L. (1955) 1795, *as amended*, 3 P.S. §68.1 *et seq.*

The issues presented for our consideration are: 1) whether the operation of the laboratory and the sampling procedures used by the Department act to deprive Petitioners of property without due process of law; 2) whether the present investigational allowances which include minimum allowances for sampling error act to deprive Petitioners of due process of law; and 3) whether the decisions and orders of the Secretary are supported by substantial evidence in the record.

We note preliminarily that our scope of review here is limited. We must determine whether the adjudications appealed from violate the constitutional rights of the Petitioners, whether an error of law has been committed or whether any necessary finding of fact is not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

I

Petitioners' first argument is that the laboratory operation and sampling procedures used in inspecting their fertilizers were so unreasonable as to cause a deprivation of their right to due process of law. Specifically, Petitioners argue that they should have been notified when fertilizer samples were to be taken, that the sampling technique currently used by inspectors is inadequate to obtain a representative sample of "dry-blend" fertilizer, that adequate steps are not taken to ensure that the sample is not adulterated and that the laboratory procedures are performed in a less than precise manner.

With regard to the notice issue and alleged careless handling of the samples from the time they are taken through their analysis in the laboratory, we fail to find any deprivation of due process. While one manual used by inspectors does suggest that samples should be taken in the presence of the fertilizer manu-.

facturer nothing in the Law or regulations requires such notice. We have been presented with and find no constitutional infirmity in the Department's failure to notify the manufacturer as to when and where each inspection is to occur. Since consumers may request that fertilizer which they have purchased be inspected, the inspections often occur at locations distant from the place of manufacture. Our conclusion that no constitutional violation occurs as a result of the failure to notify is supported by the provision in Section 6(d) of the Law which provides that, "Upon request, the secretary shall furnish to the registrant a portion of any sample found subject to penalty or other legal action." 3 P.S. §68.6(d). We believe that Petitioners' rights are adequately protected thereby. Our review of the record also discloses no constitutional deprivation as a result of the procedures used by the Department in handling official samples, although we certainly encourage precision in the handling and testing of the samples.

With respect to the adequacy of the sampling technique used we note that the examiner found based on substantial evidence that the Department followed the procedures required by Department regulations.[3] A constitutional attack on the technique itself, therefore, is a challenge to the Department's regulations.

In reviewing the constitutionality of regulations it is a basic premise that the Commonwealth may in the exercise of its police power enact regulations in order to protect the health, safety and welfare of its citizens even though those regulations might impinge on individual property rights. *Department of Environmental Resources v. Pennsylvania Power Co.*, 490 Pa.

---

[3] Department regulations provide that procedures adopted by the Association of Offical Analytical Chemists (AOAC) for obtaining samples, sample preparation and analysis shall be used. 7 Pa. Code §73.8(c) and (d).

399, 416 A.2d 995 (1980). The rule used to judge whether there has been an unconstitutional exercise of the police power states that:

> To justify the State in . . . interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. *The legislature may not,* under the guise of protecting the public interests, *arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations.* (Emphasis added.)

*Commonwealth v. Barnes and Tucker Co.,* 472 Pa. 115, 123, 371 A.2d 461, 465, *appeal dismissed,* 434 U.S. 807 (1977) (quoting *Lawton v. Steele,* 152 U.S. 133, 137 (1894)). A heavy burden is imposed on one who challenges the constitutionality of the exercise of the police power. *Barnes and Tucker Co., supra.*

Before addressing the merits of Petitioners' challenge we deem it necessary to briefly explain the theory of "segration" which is the basis of Petitioners' challenge to the method of sampling as well as to the calculation of investigational allowances. The fertilizers here involved are made up of different sized particles, each of which contain one chemical ingredient (nitrogen, phosphoric acid or potash). The fertilizer is simply a "dry-blend", or mixture, of these three ingredients as opposed to a "chemical-blend" in which each particle would contain all three of the ingredients. Although these non-homogeneous particles are thoroughly mixed by the manufacturer, once the fertilizer leaves the blending machine the smaller particles tend, over time, to settle to the bottom of their

container leaving the larger particles on top. The problem of obtaining a representative sample once this segregation process begins is addressed by Petitioners' challenge.

The method of sampling bagged fertilizer used by the Department is that adopted by the Association of Official Analytical Chemists (AOAC), an organization made up, in part, of fertilizer industry professionals which adopts official testing and sampling procedures. The method involves inserting a probe, measuring in length approximately thirty-six inches, diagonally from one corner of the bag through the middle and to the opposite corner of the bag. One sample from each of ten bags in a lot of fertilizer is thus obtained. The ten samples are then combined and divided in half. One of the halves becomes the "official sample" and is transported to the laboratory for analysis.

Petitioners argue that this method of sampling, due to the segregation problem, is inadequate to obtain a representative sample of a lot of fertilizer and that civil penalties imposed as a result of deficiencies found in such a sample are unconstitutional. We must disagree.

Petitioners introduced expert testimony that single probe inserted into a bag of fertilizer would not produce a representative sample from that bag and that three probes inserted into a single bag were necessary. The same expert testified, however, that the "corner to corner" sampling technique used by the Department does compensate to some degree for the segregation problem. Other expert testimony challenged the adequacy of using only ten probes, no matter the size of the lot, to obtain a representative sample of the entire lot. Keeping in mind that the means used to accomplish the public purpose, here ensuring that fertilizers sold to consumers contain that which is

guaranteed must be reasonably related to that purpose, we find no violation of constitutional rights. While use of additional samples would likely increase the probability of obtaining a truer representation of the fertilizer lot, we cannot agree that the method now used is either unreasonable or invalid. Based on our review of the record we conclude that the sampling method used is reasonable and that Petitioners have failed to sustain their burden of proving a violation of their constitutional rights.

## II

Petitioners' next argument is that the investigational allowances used in determining the existence of deficiencies are unconstitutional because they do not include sufficient sampling error allowances. Petitioners argue that the investigational allowances presently in use were calculated based upon analyses of the previously mentioned "chemically-blended" fertilizer. Since sampling this homogeneous fertilizer[4] resulted in minimal sampling error the investigational allowances which were then calculated include substantially more allowance for analytical error—error occurring in the laboratory analysis—than for sampling error. Expert testimony in the record indicates that in sampling "dry-blend," non-homogeneous fertilizer which tends to separate over time, the sampling error is much higher. Petitioners conclude that use of the previously calculated investigational allowances is, therefore, unreasonable. In other words, Petitioners argue that the allowances presently used to determine the existence of deficiencies in their fertilizer were calculated based on a completely different type of fertilizer and that Peti-

---

[4] Petitioners' brief indicates that the "chemically-blended" fertilizer is no longer manufactured by Petitioners due to high expense in the blending process and unspecified environmental considerations.

tioners' non-homogeneous fertilizer will often be found deficient when it actually meets its guaranteed analysis, due to the failure of the Department to account for sampling error.

We find Petitioners' argument to be persuasive; however, we do not agree that the investigational allowances now used are so unreasonable as to cause a violation of constitutional rights. We note that the Law specifically provides that, "It is the legislative intent that the Department of Agriculture, so far as practicable, adopt the tolerances established in the current Model Regulations printed in the annual publications of the Association of American Plant Food Control Officials [AAPFCO]." Section·7(a) of the Law, 3 P.S. §68.7(a). In interpreting and construing statutes we must "ascertain and effectuate the intention of the General Assembly." Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921(a). We find that the legislature's reliance on the calculations of the AAPFCO is reasonable and believe that Petitioners' appropriate remedy is to effect change through the AAPFCO. We are mindful that:

> The power of judicial investigation does not concern itself with the wisdom of the policy emanating from the legislative branch, or whether the best of all possible means of achieving the desired result has been selected. It is concerned only with the questions of whether the statute has a recognized police purpose, and whether it has a reasonable relation to the object to be attained.

*Bortz Coal Co. v. Commonwealth,* 2 Pa. Commonwealth Ct. 441, 451, 279 A.2d 388, 394 (1971) (quoting *White's Appeal,* 287 Pa. 259, 265, 134 A. 409, 411 (1926)). We conclude that the means adopted by the legislature are reasonably related to the legitimate

purpose of ensuring that fertilizer sold in the Commonwealth meets its guaranteed analysis.

### III

Petitioners' final argument is that the decisions and orders of the Secretary are not supported by substantial evidence. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Bortz Coal Co., supra.* We repeat that Petitioners bore a heavy burden of proving the invalidity of the Department's procedures. We find that, based upon the Department's detailed description of the sampling and laboratory procedures used in analyzing Petitioners' fertilizer, there is clearly substantial evidence to support the Secretary's conclusion that the procedures are adequate and appropriate.[5]

Orders affirmed.

### ORDER

AND Now, this 15th day of April, 1981, the orders of the Secretary of Agriculture dated February 2, 1980 at Docket Nos. 78-1 and 78-2 are hereby affirmed.

Judge WILKINSON, JR. did not participate in the decision in this case.

---

[5] We also conclude, therefore, that the Secretary's findings are based upon evidence in the record apart from the four scientific articles submitted by the Department which Petitioners objected to as hearsay.