IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tredyffrin Outdoor, LLC,              :
                         Appellant    :
                                      :
          v.                          :   No. 1305 C.D. 2021
                                      :
Zoning Hearing Board of               :
Tredyffrin Township                   :   Submitted:  October 28, 2022

BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                                    FILED:  May 5, 2023

Appellant Tredyffrin Outdoor, LLC (Outdoor) appeals from the Court of

Common Pleas of Chester County's (Common Pleas) October 19, 2021 order, which

denied Outdoor's land use appeal. Through that order, Common Pleas affirmed

Appellee Zoning Hearing Board of Tredyffrin Township's (Board) October 24, 2019

Decision, which denied Outdoor's appeal of the Township zoning officer's denial of

Outdoor's application for an advertising sign permit, as well as its substantive

validity challenge to former Section 208-131 of Tredyffrin Township's (Township)

Zoning Ordinance.[1] After thorough review, we reverse in part and affirm in part.

## I. Background

> [Outdoor] is the lessee of property known as 1819 East
> Lancaster Avenue, [in] Paoli, Pennsylvania [(Property)].
> [Board's Decision, Findings of Fact (F.F.) ¶¶3, 11-13.]

---

[1] Tredyffrin Township Zoning Ordinance of 1939, Chester County, Pa., *as amended*
(1939). Subsequent to Outdoor's appeal to the Board and its substantive validity challenge, the
Township's Board of Supervisors substantially revised and replaced Section 208-131 when it
enacted Ordinance HR-437 on August 17, 2020.

The Property is located at the corner of Route 30 and Route 252 in the C-1 and Advertising Sign Overlay District in the Township. [On the Property is] an existing advertising sign [(Sign)]. [*Id.*, F.F. ¶4.] The Sign is a vinyl wrap advertising sign and was erected approximately [70] years ago. [*Id.*, F.F. ¶¶10, 21.] It is [8] feet tall, [136] square feet in size[,] and [is] single[-]faced. [*Id.*, F.F. ¶¶16, 19-20.] In 1974, the Sign was recognized as non-conforming [regarding the Zoning Ordinance's then-applicable regulations]. [*Id.*, F.F. ¶22.]

In 2004, the Township['s Board of Supervisors] adopted Ordinance HR-329 [(HR-329)]. HR-329, with the exception of Section III, was codified at [former Zoning] Ordinance § 208-131 . . . [, which ]established the Advertising Sign Overlay District [(Overlay District)] . . . [and] permit[ted] advertising signs within the Overlay District by conditional use. [*Id.*, F.F. ¶¶23-26; former Zoning Ordinance § 208-131.A.] Pursuant to the [former Zoning] Ordinance, any such advertising signs shall not exceed [15] feet in height or [136] square feet in area. [Former Zoning Ordinance] § 208-131[.B]. The number of advertising signs on any parcel is limited to one. []*Id.*[]§ 208-131.C[].

Three . . . properties are located within the Overlay District: the . . . Property and two other parcels[. *Id.* § 208-131.A]. The other parcels also contain advertising signs. The parcel located at 750 Bear Hill Road has a double-faced billboard with each face being more than three . . . times the area of the Sign and taller than the limitation in [former Section] 208-131. [*See* Reproduced Record (R.R.) at 244a-50a.] The parcel located at 21 Lancaster Avenue in Devon has seven billboards of varying heights and sizes, each taller and larger than the Sign. [*See id.* at 251a-61a.] Notwithstanding the above, the advertising signs on all of the various parcels were allowed to remain as[-]is and "by right." [Former Zoning Ordinance § 208-131.C.]

In [December] 2018, Outdoor sought [permission] to modernize the method of changing [advertising] copy on the Sign [by filing a zoning permit application (Application) with the Township]. [*See* R.R. at 184a-203a.] It proposed replacing the vinyl wrap with installed changeable LED lights. [Board's Decision, F.F. ¶¶35, 39-

2

57.] The Sign's area and height would remain the same. [*Id.*, F.F. ¶¶ 35-39]. . . . A little over a month later, the Township's Zoning Officer issued a denial letter[. R.R. at 236a-37a].

Common Pleas Decision Sur Appeal at 1-3. Therein, the zoning officer explained that, per the terms of the Zoning Ordinance, the Sign qualified as a freestanding advertising sign,[2] but not a changeable copy sign,[3] and could not be approved because, contrary to the requirements of the Zoning Ordinance, Outdoor's modernized Sign would be internally lit and would flash when it displayed images. R.R. at 236a-37a.

Outdoor appealed the zoning officer's denial to the Board on several bases. First, it lodged a substantive validity challenge[4] against former Section 208-131, on the basis that it regulated signage in the Township in a manner that was unconnected to protecting the public welfare and, thus, exceeded the Township's constitutionally

---

[2] At the time of Outdoor's Application, the Zoning Ordinance defined "freestanding sign" as "[a] sign which is self-supporting upon the ground or which is supported by means of poles, pylons or standards in the ground. A freestanding sign is not attached to a building, except by secondary supports such as guy wires." Former Zoning Ordinance § 208-6. In addition, it defined "advertising sign" as "[a] sign which directs attention to a business, commodity, service or entertainment conducted, sold or offered elsewhere than upon the property on which the sign is located. An advertising sign shall include a commercial billboard." *Id.* Section 208-6's definitions for various kinds of signs were substantially revised and replaced when the Township's Board of Supervisors enacted Ordinance HR-437 on August 17, 2020.

[3] Likewise, at the time of Outdoor's Application, the Zoning Ordinance defined "changeable copy sign" as "[a] sign on which message copy can be changed through use of attachable letters, numerals or graphics or by switching of lamps. A changeable copy sign shall not be considered to be an animated sign." Former Zoning Ordinance § 208-6.

[4] Section 916.1 of the Pennsylvania Municipalities Planning Code (MPC) authorizes landowners to "challenge the [substantive] validity of an ordinance or map or any provision thereof which prohibits or restricts the use or development of land in which he has an interest[.]" Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10916.1.

granted police power.[5] *See* R.R. at 173a-174a. Second, Outdoor maintained that the zoning officer had erroneously determined that the Sign did not qualify as a changeable copy sign. *Id.* at 176a. Third, it asserted that, even if the sign was not a changeable copy sign, the zoning officer had incorrectly interpreted the Zoning Ordinance as prohibiting internal sign illumination. *Id.* at 176a-177a. Finally, Outdoor claimed that the zoning officer had wrongly concluded that the Sign would flash when it displayed images and was consequently barred by the Zoning Ordinance. *Id.* at 177a.[6]

The Board held hearings regarding Outdoor's substantive validity challenge and its appeal on May 29, 2019, July 9, 2019, and July 25, 2019. Thereafter, on October 24, 2019, the Board issued its Decision, through which it unanimously denied the substantive validity challenge and affirmed the zoning officer's denial of Outdoor's Application. In doing so, the Board noted that the zoning officer had reversed his initial conclusion that the Sign did not constitute a changeable copy sign, but agreed with him that the Sign was nevertheless barred because it would flash by "chang[ing] instantaneously, every six . . . seconds, to different lit images," and would be internally illuminated. Decision, F.F. ¶¶62-69; *id.* Conclusions of Law (C.L.) ¶¶16-24; *id.*, Discussion at 14-18. Additionally, the Board rejected Outdoor's substantive validity challenge, reasoning that former Section 208-131 had merely legalized preexisting, non-conforming signs in a uniform manner across the three properties in the Overlay District and did not treat those properties in an arbitrary or

---

[5] "Police power controls the use of property by the owner, for the public good, its use otherwise being harmful[.]" *Appeal of White*, 134 A. 409, 411 (Pa. 1926).

[6] Outdoor also challenged the Township's $10,000 fee for applicants who wished to make substantive validity challenges to its ordinances. R.R. at 174a.

discriminatory way. *See id.*, F.F. ¶¶71-78; *id.*, C.L. ¶¶25-34; *id.*, Discussion at 19-22.[7]

Outdoor then appealed to Common Pleas, which took no additional evidence and, on October 19, 2021, affirmed the Board's Decision in full. This appeal to our Court followed shortly thereafter.

## II. Discussion

Outdoor presents several arguments in support of its position that reversal of Common Pleas' order is warranted, which we summarize and reorder as follows.[8] First, the Board improperly denied Outdoor's substantive validity challenge. Outdoor claims that former Section 208-131 accorded signage rights in the Overlay District based not upon some uniform standard that came within the Township's authority to protect the public health, safety, and welfare; instead, in Outdoor's view, the Township arbitrarily awarded such rights based only on what signs were already in the Overlay District prior to its creation, which renders former Section 208-131

---

[7] The Board did grant Outdoor's substantive validity challenge to the aforementioned $10,000 filing fee, and issued a recommendation that "the Township review and revise as appropriate the filing fee as part of its adoption of the 2020 fee schedule resolution." Decision, Order ¶4; *see also id*. F.F. ¶¶79-86; *id.*, C.L. ¶¶35-37; *id.*, Discussion at 22-23. The Board's ruling on this point was not appealed by either Outdoor or the Township and had no bearing on Common Pleas' handling of Outdoor's appeal, or on our disposition of this matter.

[8] As Common Pleas took no additional evidence, our standard of review is limited to determining whether the Board violated Outdoor's constitutional rights, committed an error of law, or abused its discretion. *SSEN, Inc. v. Borough Council of Borough of Eddystone*, 810 A.2d 200, 208 n.11 (Pa. Cmwlth. 2002). "An abuse of discretion occurs when [a local agency's factual] findings are not supported by substantial evidence in the record." *Coal Gas Recovery, L.P. v. Franklin Twp. Zoning Hearing Bd.*, 944 A.2d 832, 838 (Pa. Cmwlth. 2008). "By 'substantial evidence' we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983) (citations omitted).

5

unconstitutional. Outdoor's Br. at 13-17.[9] Second, Outdoor maintains that the Board abused its discretion, acted in an arbitrary and capricious manner, and committed an error of law by affirming the zoning officer's ruling that the Sign would flash when in operation and, thus, was prohibited by the Zoning Ordinance. *Id.* at 40-47. Finally, Outdoor similarly asserts that the Board abused its discretion, acted in an arbitrary and capricious manner, and committed an error of law by affirming the zoning officer's ruling that the Zoning Ordinance bars internally illuminated signs. *Id.* at 27-39.

A. Substantive Validity of former Section 208-131 of the Zoning Ordinance

We agree with Outdoor that the Board abused its discretion, to the extent it concluded that former Section 208-131 is substantively valid *in toto*.

> Property owners have a constitutional right to enjoy their property. U.S. CONST. amends. V, XIV; PA. CONST. art. I § 1. However, townships may place reasonable limits on the right of private property owners to do what they wish with their property by enacting zoning ordinances in accordance with [each] township's police powers to protect the public health, safety, and welfare. Section 604 of the MPC, 53 P.S. § 10604; *In re Realen Valley Forge Greenes Associates*, . . . 838 A.2d 718, 727-[]29 ([Pa.] 2003); *Penn Street, L.P. v. East Lampeter* [*Twp.*] *Zoning Hearing* [*Bd.*], 84 A.3d 1114, 1134 (Pa. Cmwlth. 2014). A zoning ordinance is presumed to be constitutional unless the party challenging the ordinance demonstrates that the ordinance is unreasonable, arbitrary, or not substantially related to a township's power to protect the public health, safety, and welfare. *Village of Euclid . . . v. Ambler Realty Co.,* 272 U.S. 365 . . . (1926); *BAC, Inc. v.* [*Bd.*] *of* [*Sup'rs*] *of* Millcreek [*Twp.*], . . . 633 A.2d 144, 146-147 ([Pa.]1993); *Keinath v.* [*Twp.*] *of Edgmont*, 964 A.2d 458,

---

[9] Outdoor also claims that HR-329 is substantively invalid, but, as HR-329 is simply a local ordinance that was passed by the Township's Board of Supervisors, which was codified in a slightly modified way as former Section 208-131, Outdoor's arguments regarding HR-329 are simultaneously duplicative and irrelevant.

462 (Pa. Cmwlth. 2009); *Fisher v. Viola*, 789 A.2d 782, 785 (Pa. Cmwlth. 2001). In examining whether the ordinance is a valid exercise of the police powers, reviewing courts employ a substantive due process analysis, balancing the public interest to be served by the ordinance against the confiscatory or exclusionary impact of the ordinance on individual property rights; however, where the validity is debatable, it is the legislature's judgment that must control. *Boundary Drive* [*Assocs.*] *v. Shrewsbury* [*Twp. Bd.*] *of* [*Sup'rs*], . . . 491 A.2d 86, 90 ([Pa.] 1985); *Penn Street*, 84 A.3d at 1134.

*Delchester Devs., L.P. v. Zoning Hearing Bd. of Twp. of London Grove*, 161 A.3d 1081, 1091-92 (Pa. Cmwlth. 2017). "In other words, we must examine the reasonableness of the restriction on land use in light of the deprivation of the landowner's freedom thereby incurred." *Penn Street*, 84 A.3d at 1134.

Former Section 208-131, the Zoning Ordinance provision challenged by Outdoor, reads as follows:

A. Freestanding advertising signs shall be permitted by conditional use in an overlay district consisting of the following parcels: 43-9M-160, [*i.e.*, the Property,] 43-10-11, [*i.e.*, 750 Bear Hill Road,] and 43-11E-80[, *i.e.*, 21 Lancaster Avenue]. Freestanding advertising signs are also subject to the general standards prescribed in [Section] 208-117 [of the Zoning Ordinance] and the regulations of [Section] 208-123. In the event of a conflict among [Section] 208-117, [Section] 208-123 and this [Section], the most restrictive regulation shall prevail. The applicant for conditional use approval for a freestanding advertising sign shall have the burden of proving compliance with all applicable criteria and regulations. Documents and plans necessary to establish compliance shall be submitted to the Township with the conditional use application.

B. Signs shall not exceed 136 square feet in area and signs and their supporting structure shall not exceed 15 feet in height, except that signs existing on the parcels listed in Subsection A above on the effective date of this section that are larger and/or higher may continue as uses by right.

7

C. No more than one freestanding advertising sign may be erected on a lot, either alone or with another principal use or uses, except that signs in excess of one existing on the parcels listed in Subsection A above on the effective date of this section may continue as uses by right.

D. Signs may be externally lit: Lighting shall comply with the Illuminating Engineering Society of North America's ("IESNA") recommended practices and criteria contained in the [IESNA] Lighting Handbook, including but not limited to criteria for "full cutoff" fixtures. Fixtures shall be equipped with or be capable of being back-fitted with light-directing devices such as shields, visors or hoods when necessary to redirect offending light distribution. All fixtures shall be aimed to illuminate the advertising copy only. All lighting shall be aimed, located, designed, fitted and maintained so as not to present a hazard to drivers or pedestrians by impairing their ability to safely traverse and so as not to project or reflect light onto a neighboring use or property. If adjacent to residential zoning districts, the signs shall be lit only from dusk to 12:00 midnight. All lighting fixtures shall be equipped with devices which automatically extinguish the lighting at 12:00 midnight.

Former Zoning Ordinance § 208-131. Former Section 208-131 also includes the following, relevant note:

Editor's Note: Effect on existing advertising signs. . . .

HR-329 also provided that:

"A. Notwithstanding the provisions of [Section] 208-131 . . . , advertising signs on the parcels identified above existing as of the effective date of this ordinance may be continued and shall not be deemed nonconforming as to use, dimension or other requirement made effective by the enactment of this ordinance.

B. For the purpose of regulation and enforcement, the Code Enforcement Officer shall make and maintain a list of all advertising signs on the parcels identified above existing as of the effective date of this [Zoning O]rdinance. The list shall be filed in

8

> the office of the Code Enforcement Office and used
> to assure compliance with this ordinance."

*Id.*

Former Section 208-131 establishes uniform conditional use regulations regarding the permissible size and height of freestanding advertising signs, as well as regarding the number of such signs allowed on each parcel in the Overlay District. While regulations of this nature are constitutionally permissible, what *is not* is the carve-out former Section 208-131 created for preexisting signs in the Overlay District, which legalized those signs and declared them to be, in their then-current form, permissible by right. This carve-out cannot be deemed to have a substantial relationship to the Township's police power, as it was predicated not upon the physical specifics of the preexisting signs, or upon whether those signs comported with the Township's general determinations regarding what sort of signs should be allowed in the Overlay District; rather, former Section 208-131's designation of certain signs as allowed by right was based *entirely* upon whether those signs were already in place at the time that former Section 208-131 was codified into the Township's Zoning Ordinance. This categorical distinction is arbitrary and, thus, constitutionally impermissible.

This, however, does not mean that former Section 208-131 must be deemed substantively invalid *as a whole*.

> In general, a statute or ordinance may be partially valid and partially invalid, and if the provisions are distinct and not so interwoven as to be inseparable, the courts should sustain the valid portions. *Saulsbury v. Bethlehem Steel [Co.],* . . . 196 A.2d 664, 666, 667 ([Pa.] 1964). In determining the severability of a statute or ordinance, the legislative intent is of primary significance. *Id.* The legislating body must have intended that the act or ordinance be separable, and the statute or ordinance must be capable of separation in fact. *Id.* Thus, the valid portion

9

of the enactment must be independent and complete within itself. *Id.*

*Pa. Indep. Waste Haulers Ass'n v. Twp. of Lower Merion*, 872 A.2d 224, 228 n.16 (Pa. Cmwlth. 2005). Furthermore,

> [t]he possible severability of provisions of the ordinance is always germane because the Statutory Construction Act of 1972, at 1 Pa. C.S. § 1925, provides:
>
> > "The provision of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provisions to other persons or circumstances, shall not be affected thereby, unless the Court finds that the valid provisions of the statutes are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent."

*Greenwood Twp. v. KEFO, Inc.*, 416 A.2d 583, 586 (Pa. Cmwlth. 1980); *see id.* ("Rules of statutory construction are applicable to statutes and ordinances alike."). In this instance, there is no question that the Township's Board of Supervisors intended any offending portions of Section 208-131 to be severable from the rest. Section V of HR-329 is titled "Severability" and reads as follows:

> If any sentence, clause, section or part of this Ordinance is for any reason found to be unconstitutional, illegal or invalid, such unconstitutionality, illegality or invalidity shall not affect or impair any of the remaining provisions, sentences, clauses, sections or parts hereof. It is hereby declared as the intent of the Board of Supervisors that this Ordinance would have been adopted absent said provisions, sentences, clauses, sections or parts.

R.R. at 206a. This language unmistakably evinces the Board of Supervisors' clear, unambiguous intent to render Section 208-131 severable in whole or in part. Furthermore, the offending portions of Section 208-131, *i.e.*, those declaring preexisting signs within the Overlay District to be permissible by right without regard to their quantity or physical particulars, have no effect upon the viability of the remaining parts. Therefore, we conclude that the only substantively invalid pieces of Section 208-131 are as follows: Subsection B and Subsection C, but only insofar as those subsections state that preexisting signs in the Overlay District are allowed by right; and Subsection A of the Editor's Note, which states that those signs should not be considered as nonconforming.

The substantive invalidity of these subsections is ultimately of no help to Outdoor. Indeed, the practical effect of our holding on this point is that the signs on the properties located at 750 Bear Hill Road and 21 Lancaster Avenue, which exceed the Zoning Ordinance's size, height, and/or number restrictions, are simply transformed into, or returned to their previous existence as, nonconforming uses.

> A lawful nonconforming use is a use that predates the enactment of a prohibitory zoning restriction. The right to continue a lawful nonconforming use is afforded the constitutional protections of due process. As such, a property owner's right to continue a legal nonconforming use is an interest that runs with the land, so long as the use is not abandoned.

*Sowich v. Zoning Hearing Bd. of Brown Twp.*, 214 A.3d 775, 785 (Pa. Cmwlth. 2019) (internal citations omitted). As for the Sign, it fully complies with former Section 208-131's restrictions and, thus, has been made into an authorized, by right use of the Property. *See* Decision, F.F. ¶77; *id.*, Discussion at 20; *id.*, C.L. ¶30. This did not impinge upon Outdoor's ability to keep the Sign in its preexisting state and, as a result, legalized a nonconforming use in an entirely constitutional manner. *See*

11

*Pennridge Dev. Enterprises, Inc. v. Volovnik*, 624 A.2d 674, 677 (Pa. Cmwlth. 1993) ("[S]ince a nonconforming use is not entitled to greater rights that those afforded a conforming use, [a landowner] cannot be disadvantaged by having its nonconforming use converted to a permitted use."); *see id.* at 676 (a municipality acts in an unconstitutional manner if it enacts an ordinance that eliminates a nonconforming use without also proving just compensation to the affected landowner); *accord Warner Co. v. Zoning Hearing Bd. of Tredyffrin Twp.*, 612 A.2d 578, 585 (Pa. Cmwlth. 1992). Accordingly, the remaining, substantively valid provisions of former Section 208-131 still fully govern the Sign.

## B. The Meaning of "Flash"

Furthermore, this partial invalidation of former Section 208-131 does not affect the propriety of the Board's determination that the modified Sign would flash while in operation and, thus, was prohibited by former Section 208-123 of the Zoning Ordinance.[10] "The interpretation of a statute or ordinance presents this Court with a pure question of law, which is generally subject to plenary review." *Kohl v. New Sewickley Twp. Zoning Hearing Bd.*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015).

> Like statutes, the primary objective of interpreting ordinances is to determine the intent of the legislative body that enacted the ordinance. *See* 1 Pa. C.S. § 1921; *Bailey v. Zoning Bd. of Adjustment of City of Phila.*, . . . 801 A.2d 492 ([Pa.] 2002); *Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.*, 918 A.2d 171 (Pa. Cmwlth. 2007) . . . . In pursuing that end, we are mindful that a statute's plain language generally provides the best indication of legislative intent. *Id.* Thus, statutory construction begins with examination of the text itself. *Id.*
>
> In reading the plain language of a statute, "[w]ords and phrases shall be construed according to rules of grammar

---

[10] The Township's Board of Supervisors substantially revised and replaced former Section 208-123 when it enacted Ordinance HR-437 on August 17, 2020.

12

and according to their common and approved usage." 1 Pa. C.S. § 1903(a). Further, every statute shall be construed, if possible, to give effect to all its provisions so that no provision is "mere surplusage." 1 Pa. C.S. § 1921(a). Where the words in an ordinance are free from all ambiguity, the letter of the ordinance may not be disregarded under the pretext of pursuing its spirit. 1 Pa. C.S. § 1921.

Thus, if we determine the ordinance provision at issue is unambiguous, we must apply it directly as written. *Bowman v. Sunoco, Inc.*, . . . 65 A.3d 901 ([Pa.] 2013); *see* 1 Pa. C.S. § 1921(b). However, if we deem the language of the ordinance ambiguous, we must then ascertain the legislative body's intent by statutory analysis, wherein we may consider numerous relevant factors. *Id.* An ambiguity exists when language is subject to two or more reasonable interpretations and not merely because two conflicting interpretations may be suggested. *Adams Outdoor Adver., L.P. v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469 (Pa. Cmwlth. 2006).

*Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 509-10 (Pa. Cmwlth. 2014). "With respect to zoning matters, undefined terms are given their plain meaning, and any doubt is resolved in favor of the landowner and the least restrictive use of the land." *Kohl*, 108 A.3d at 968. Additionally,

we note the . . . well-settled principle that a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference. *Smith v. Zoning Hearing Bd.*, 734 A.2d 55, 57 (Pa. Cmwlth. 1999) . . . . Such deference is appropriate because a zoning hearing board, as the entity charged with administering a zoning ordinance, possesses knowledge and expertise in interpreting that ordinance. *Id.* at 58.

*Risker v. Smith Twp. Zoning Hearing Bd.*, 886 A.2d 727, 731 (Pa. Cmwlth. 2005). "Similarly, 'because [a township's zoning officer] is charged with the administration and execution of the [ordinance], his interpretation of the ordinance is entitled to deference and should not be disregarded unless shown to be clearly erroneous.'"

13

*Kohl*, 108 A.3d at 968 (quoting *McIntyre v. Bd. of Sup'rs of Shohola Twp.*, 614 A.2d 335, 337 (Pa. Cmwlth. 1992)).

Former Section 208-123.G of the Zoning Ordinance reads, in relevant part, as follows: "No signs which flash . . . shall be permitted." Former Zoning Ordinance § 208-123.G. As the Zoning Ordinance does not define "flash," we consequently turn to the dictionary for guidance. Like the Board, we note that Merriam-Webster defines "flash" in relevant part, as:

> **2**
>
> > **a**: to cause the sudden appearance of (light)
> >
> > . . . .
> >
> > **c**[:]
> >
> > > **(1)**: to cause (light) to reflect
> > >
> > > **(2)**: to cause (something) to reflect light [, *e.g.*,] flash a mirror
> > >
> > > **(3)**: to cause (a lamp) to flash
> >
> > **d**: to convey by means of flashes of light
>
> **3**
>
> > **a:** to make known or cause to appear with great speed[, *e.g.*,] flash a message on the screen[.]

*Flash*, Merriam-Webster, https://www.merriam-webster.com/dictionary/flash (last visited May 4, 2023); *see* Decision, Discussion at 18. Additionally, we recognize that the Board made the following, relevant factual findings:

> 46. The advertisements on the proposed sign will change every six . . . seconds. [Board Hearing, Tr.,] 5/29/19 at 38.
>
> 47. The proposed sign will be capable of changing more rapidly than every six . . . seconds if the software lock is bypassed. [*Id.*] at 59.
>
> 48. When the propose[d] sign switches from one advertisement to the next advertisement, the computer will send a signal to the [Sign's] LED modules to change the entire sign face. [*Id.*] at 38-39, 41-42.

49. The transition from one advertisement to the next advertisement will be instantaneous. [*Id.*] at 51, 57, 85.

Decision, F.F. ¶¶46-49. Given these findings, and the generally understood meaning of "flash," we cannot conclude that the Board committed an error of law when it determined that the modified Sign would flash when in operation and, thus, that it was prohibited by former Section 208-123 of the Zoning Ordinance.

### III. Conclusion

In accordance with the foregoing analysis, we reverse Common Pleas' October 19, 2021 order in part and affirm it in part.[11]

_____
ELLEN CEISLER, Judge

---

[11] Due to our disposition of this appeal, we need not reach Outdoor's remaining argument challenging the Board's conclusion that former Section 208-131 prohibits internally illuminated signs.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Tredyffrin Outdoor, LLC, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1305 C.D. 2021 |
| | : | |
| Zoning Hearing Board of | : | |
| Tredyffrin Township | : | |

**O R D E R**

AND NOW, this 5th day of May, 2023, it is hereby ORDERED:

1. The Court of Common Pleas of Chester County's (Common Pleas) October 19, 2021 order is REVERSED IN PART, with regard to its affirmance of Appellee Zoning Hearing Board of Tredyffrin Township's (Board) denial of Appellant Tredyffrin Outdoor, LLC's (Outdoor) substantive validity challenge to former Section 208-131 of Tredyffrin Township's Zoning Ordinance, but only as to the portions of former Subsections 208-131.B and .C that state that preexisting signs in Tredyffrin Township's Advertising Sign Overlay District are allowed by right, and as to former Subsection A of Section 208-131's Editor's Note;

2. Common Pleas' October 19, 2021 order is AFFIRMED IN PART, as to its affirmance of the remaining parts of the Board's substantive validity challenge denial and of the Board's determination that Outdoor's proposed modified advertising sign would flash and, thus, was barred by former Section 208-123 of the Zoning Ordinance.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tredyffrin Outdoor, LLC,                    :
                          Appellant         :
                                            :
        v.                                  :     No. 1305 C.D. 2021
                                            :     Submitted: October 28, 2022
Zoning Hearing Board of                     :
Tredyffrin Township                         :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

CONCURRING AND DISSENTING OPINION
BY SENIOR JUDGE LEAVITT                              FILED:  May 5, 2023


        Respectfully, I dissent in part and concur in part.

        Tredyffrin Outdoor, LLC (Lessee) applied to Tredyffrin Township
(Township) for a permit to replace the face of its existing outdoor vinyl-wrapped
changeable copy sign[1] with a digital changeable copy sign.  At the hearing before
the Township's Zoning Hearing Board (Zoning Board), Lessee presented the
testimony of Jesse White, a representative of the manufacturer of digital billboards,
to explain their construction and operation.  White explained that a digital image of
the advertisement is transmitted to a computer inside the billboard, which translates
the data to a display on the billboard.  Zoning Board Adjudication at 7, Finding of
Fact (F.F.) No. 42.  The software allows Lessee to determine the schedule for an

---

[1] At the time of Lessee's application, the Township's Zoning Ordinance defined "changeable copy sign" as "[a] sign on which message copy can be changed through use of attachable letters, numerals or graphics or by switching of lamps.  A changeable copy sign shall not be considered to be an animated sign."  TREDYFFRIN TOWNSHIP ZONING ORDINANCE OF 1939 (Zoning Ordinance), *as amended*, *former* §208-6(B)(5); Reproduced Record at 263a (R.R. __).

advertisement, including its run time. The software does not allow the display of an animated image, and while it allows the operator to choose the run time, it must run at least six seconds. Zoning Board Adjudication at 8, F.F. No. 47. The transition from one image to another is "instantaneous" not gradual. Zoning Board Adjudication at 8, F.F. No. 49.

The Zoning Board denied Lessee's application for the stated reasons that its proposed digital billboard will use internal illumination and will flash. The Zoning Board construed the Zoning Ordinance in effect at the time Lessee submitted its application to prohibit billboards that have either feature. The Zoning Board's construction violates well-established statutory construction principles.

As to flashing signs, *former* Section 208-123(G) of the Zoning Ordinance stated, in part, as follows:

> No mobile signs, bench signs, vehicle signs, permanent sidewalk, sandwich or A-frame signs, animated signs or other than time and temperature signs, or signs that emit smoke, vapor or noise shall be permitted. *No signs which flash*, move, rotate, oscillate or which outline the rooflines, doors, windows or wall edges by illuminated tubing or strings of lights for advertising purposes *shall be permitted*.

*Former* ZONING ORDINANCE §208-123(G) (emphasis added). The term "flash" is not defined in the Zoning Ordinance. Accordingly, we "give undefined terms their plain, ordinary meaning." *Adams Outdoor Advertising, LP v. Zoning Hearing Board of Smithfield Township*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006).

Using the dictionary, the majority defines flash as "to cause the sudden appearance of (light)," "to cause (light) to reflect," "to convey by means of flashes of light" or "to make known or cause to appear with great speed[, *e.g.*,] flash a message on a screen[.]" *Tredyffrin Outdoor, LLC v. Zoning Hearing Board of*

*Tredyffrin Township* (Pa. Cmwlth., No. 1305 C.D. 2021, filed May 5, 2023), slip op. at 14 (quoting Merriam-Webster, https://www.merriam-webster.com/dictionary/flash). "Flash" is such a "plain" and "ordinary" word that to resort to the dictionary seems unnecessary. Nevertheless, using the guidance of "sudden appearance of light," one can say that lightning, often accompanied by thunder, meets the definition of "flash." Likewise, lightning bugs are said to "flash." Notably, in each case, the "flash" is preceded by some interval of darkness.

By contrast, Lessee's proposed digital billboard will use continuous light that changes color to effect a new static image.[2] A change in copy does not make a static copy image a "sign which flash[es]." *Former* ZONING ORDINANCE §208-123(G). Notably, the Zoning Ordinance does not regulate the frequency of the change for a "changeable copy sign." *Former* ZONING ORDINANCE §208-6(B)(5); R.R. 263a. Further, the Zoning Ordinance states that the "message copy can be changed . . . by switching of lamps." *Id.* Because the Zoning Ordinance authorizes a change in copy to be effected by "lamps" and without any restriction on frequency, the change itself cannot constitute a "flash." Rather, it is the image itself that must flash, just as lightning bugs flash.

In any case, Lessee's application did not state that it intended to change the digital image every six seconds, and the record does not establish the intended frequency of change. White testified only that it could *not* physically change more frequently than every six seconds. More importantly, the record establishes that the digital image on the billboard is static and does not "flash." Indeed, the image transition cannot be perceived.

---

[2] In 1939, this technology did not exist.

The Zoning Board also found that *former* Section 208-131 of the Zoning Ordinance prohibits any kind of internal illumination. It states as follows:

> *Signs may be externally lit.* Lighting shall comply with the Illuminating Engineering Society of North America's ("IESNA") recommended practices and criteria contained in the IESNA Lighting Handbook, including but not limited to criteria for "full cutoff" fixtures . . . . *All fixtures shall be aimed to illuminate the advertising copy only. All lighting shall be aimed, located, designed, fitted and maintained* so as not to present a hazard to drivers or pedestrians by impairing their ability to safely traverse and *so as not to project or reflect light onto a neighboring use or property.*

*Former* ZONING ORDINANCE §208-131(D) (emphasis added).[3] The Zoning Board construed this authorization for external lighting to constitute a prohibition of internal illumination. The majority does not address this issue, characterizing it as unnecessary because Lessee's proposed digital sign will impermissibly "flash."

The Zoning Board's strained construction of former Section 208-131(D) cannot be sustained.

First, it is inconsistent with the Zoning Ordinance provision authorizing a billboard to change its copy by using "lamps." *Former* ZONING ORDINANCE §208-6(B)(5) (definition of "Signs, Changeable Copy"). A "lamp" can only be an internal lighting source that will change the copy. Stated otherwise, former Section 208-6(B)(5) implicitly authorizes internal illumination, at least for changeable copy billboards.

---

[3] Section 208-131(M)(2) of the current Zoning Ordinance, adopted after the submission of Lessee's application, expressly prohibits internally illuminated and digital changeable-copy sign billboards. ZONING ORDINANCE §208-131(M)(2). *See also* https://ecode360.com/7117586 (last visited May 4, 2023).

Second, the Zoning Ordinance's regulation of external lighting fixtures does not implicitly state a prohibition of digital signs. It has been held that a zoning ordinance provision that states: "[i]n each district, only such uses and uses accessory and incidental thereto, as are hereinafter specified, will be permitted," expresses a prohibition of uses not listed. *Silver v. Zoning Board of Adjustment*, 112 A.2d 84, 87 (Pa. 1955). However, no comparable provision appears in the Township's Zoning Ordinance. Simply, silence cannot be construed as a prohibition. In construing a zoning ordinance that restricts

> the use of the property, *the language shall be interpreted, where doubt exists as to the intended meaning of the language written* and enacted by the governing body, *in favor of the property owner* and against any implied extension of the restriction.

Section 603.1 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10603.1 (emphasis added). Because there is doubt that former Section 208-131(D) of the Zoning Ordinance prohibits internal illumination of billboards, the Zoning Ordinance must be interpreted in favor of Lessee.

Several states have prohibited outdoor advertising signs. *See*, *e.g.*, Me. Rev. Stat. Ann. tit. 23, §1908 (West 1977). Unless and until Pennsylvania follows this public policy initiative, outdoor advertising is a lawful use. Any restriction on the use of property for digital billboards must be provided in clear terms, as has been stated, without any doubt, in Section 208-131(M)(2) of the current Zoning Ordinance.

I agree with the majority on the substantive validity challenge. However, I would reverse the trial court on the other two issues.

_____
MARY HANNAH LEAVITT, President Judge Emerita